IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| THE BABCOCK & WILCOX COMPANY, | § | |
| Plaintiff, | § | Civil Action No. 05-4202 |
| | § | Civil Action No. 06-223 |
| | § | |
| v. | § | Section "J" (1) |
| | § | Judge Carl J. Barbier |
| MCGRIFF, SEIBELS & WILLIAMS, | § | |
|  INC. and MCGRIFF, SEIBELS & | § | Magistrate Judge Sally Shushan |
| WILLIAMS OF TEXAS, INC., | § | |
| Defendants | § | **JURY TRIAL DEMANDED** |


<u>DEFENDANTS McGRIFF, SEIBELS & WILLIAMS, INC.'S AND McGRIFF, SEIBELS</u>
<u>& WILLIAMS OF TEXAS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION</u>
<u>TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR, ALTERNATIVELY, MOTION</u>
<u>FOR ADMINISTRATIVE STAY OF SUIT PENDING RESOLUTION OF STATE COURT ACTION AND</u>
<u>INSURANCE COVERAGE ISSUES; AND RULE 12(B)(7) MOTION TO DISMISS FOR FAILURE</u>
<u>TO JOIN A PARTY UNDER RULE 19</u>


Defendants McGriff, Seibels & Williams of Texas, Inc. ("MSW Texas") and McGriff, Seibels &

Williams, Inc. ("MSW"), collectively "Defendants,"[1] submit this memorandum in support of their Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, alternatively, Motion for an Administrative Stay of this suit pending resolution of an underlying state court action and B&W's coverage issues with its third layer excess carrier, and additionally submit their Rule 12(b)(7) Motion to Dismiss for failure to join a party under Rule 19.

### Statement of the Case

The Babcock & Wilcox Company ("B&W") and certain of its subsidiaries filed for voluntary relief under Chapter 11, Title 11 of the United States Code on February 22, 2000.

On or about September 3, 2003, B&W was served with a complaint (the "Underlying Case") filed in Illinois state court by Citgo Petroleum Corporation and PDV Midwest Refinery L.L.C., (the "Citgo Plaintiffs") seeking recovery of damages arising out of a fire that took place at its Lemont, Illinois refinery in August of 2001. No specified damages were set forth in the Underlying Case. At the time the Underlying Case was filed, B&W was insured by primary and excess layers of general liability insurance covering claims in excess of a self-insured retention and deductible. The primary and excess insurance layers totaled $375,000,000.00 in coverage and included a third layer excess liability "claims made" policy of insurance issued by Starr Excess Liability Insurance Exchange ("Starr"), for the policy period from January 1, 2003, through January 1, 2004.

---

[1] On June 13, 2006, B&W filed its First Amended Complaint, purporting to add Defendants' errors and omissions and professional liability insurers pursuant to Louisiana's Direct Action Statute, LSA R.S. 22:655 *et seq.* Defendants' Motions to Dismiss apply as well to the allegations of the First Amended Complaint and to any liability that is contingent and dependent upon a finding of legal liability against Defendants.

On November 1, 2005, B&W filed its Original Complaint, alleging that Defendants, through its offices and employees, contracted to perform certain claims services related to the Starr policy. Specifically, B&W alleges that upon receipt of notice of the Underlying Case, Defendants notified the first and second layer excess insurance carriers of the Citgo Plaintiffs' claim but failed to notify Starr of the claim within the policy period. As a result, B&W alleges that it has lost the benefit of a settlement offer that would have limited collection to available insurance limits and it seeks declaratory relief that Defendants are responsible for any losses in excess of insurance coverage that B&W may incur in the future as a result of the Underlying Case. B&W has set forth claims for declaratory relief, fraud, breach of contract, breach of duty of good faith, negligence, unjust enrichment and breach of fiduciary duty.

Subsequently, B&W has entered into a settlement agreement with the Citgo Plaintiffs and certain intervening underwriters entitled "Joint Stipulation and Accord" ("JSA"), approved by the bankruptcy court on December 22, 2005. A true and correct copy of the JSA is attached hereto has Exhibit "A" and is incorporated herein by reference the same as if fully set forth. The terms of the JSA have been subsequently modified by stipulation specifying that B&W's maximum liability for non-insured damages will be limited to $47,500,000.

All of the parties to this litigation contend that Starr improperly denied coverage and the pursuit of all claims against Starr is a condition to the benefits and obligations set forth in the JSA. The Illinois state court action has been assigned to the expedited tort action pool and it is anticipated that trial will occur some time this year.

3

B&W has denied and continues to vigorously contest liability in the Underlying Case[2] and the allegations of the instant case make it clear that there may, ultimately, be no damages awarded in the Underlying Case and that this entire proceeding may prove unnecessary.

B&W's allegations establish conclusively that there is no present case or controversy between the parties and that this action must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, if the Court determines that subject matter jurisdiction exists, it should exercise its discretion to stay this action pending resolution of the Underlying Case and of B&W's coverage issues with its third layer excess carrier, Starr. The finder of fact could then, if necessary, render meaningful findings based upon concrete issues of liability and specific damages suffered by B&W. Further, resolution of B&W's coverage issues involving the Starr policy is a condition precedent to B&W paying anything to the Citgo Plaintiffs above and beyond the initial $7,500,000 that was paid pursuant to the JSA at the time B&W's Plan or Reorganization became effective, and even that sum is subject to reimbursement depending upon the amount either B&W or the Citgo Plaintiffs recover against Starr through subsequent settlement, arbitration or direct action. Therefore, final resolution of the Starr coverage issues are necessary in order for complete relief to be fashioned herein, necessitating Starr's joinder, or, if joinder is impossible, necessitating that this case be dismissed.

---

[2]See Joint Motion to Approve Agreement to Modify the Automatic Stay, ¶ 6, pg 2, filed on July 28, 2005, by B&W, the Citgo Plaintiffs and the intervening insurers, in Bankruptcy No. 00-10992, *In re The Babcock & Wilcox Company,* in the United States Bankruptcy Court for the Eastern District of Louisiana. A true and correct copy of the Joint Motion is attached hereto as Exhibit "B" and is incorporated herein by reference the same as if fully set forth.

4

Argument and Authorities

I.    <u>This Court Lacks Subject Matter Jurisdiction</u>

Federal courts are "powerless to act without jurisdiction." *University of South Alabama v. The American Tobacco Co.,* 168 F. 3d 405, 410 (11th Cir. 1999). Article III of the Constitution restricts a federal court's jurisdiction to actual "cases" or "controversies" U.S. CONSTITUTION art. III, § 2, cl. 1. Whether this requirement is met in the context of a request for relief pursuant to the federal Declaratory Judgment Act depends upon "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S. Ct. 510 (1941). In addition to the mandates of the Constitution, the Declaratory Judgment Act also requires that the court only issue a declaration relating to an "actual controversy." 28 U.S.C. § 2201(a).

The Supreme Court stated the general rule for determining ripeness in *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240-41, 57 S. Ct. 461, 464 (1937):

> The controversy must be definite and concrete, touching the legal relations
> of parties having adverse legal interests...It must be a real and substantial
> controversy admitting of specific relief through a decree of a conclusive
> character, as distinguished from an opinion advising what the law would be
> upon a hypothetical state of facts.

The Supreme Court has made it clear that concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so, and that there is a presumption of a lack of jurisdiction unless the contrary appears affirmatively in the record. *Renne v. Geary,* 501 U.S. 312, 316,

5

111 S. Ct. 2331, 2336 (1991). The issue whether a case or controversy exists sufficient to support this Court's exercise of subject matter jurisdiction is resolved by the application of federal law. *In re Summers,* 325 U.S. 561, 566-67, 65 S. Ct. 1307, 1310-11 (1945). A declaratory judgment plaintiff bears the burden of proving that there is an actual controversy. *Fina Research, S.A. v. Baroid Ltd,* 141 F.3d 1479, 1481 (D.C. Cir. 1998).

A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical. The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required. *New Orleans Public Service, Inc. v. Council of New Orleans,* 833 F.2d 583, 586-7 (5th Cir. 1987). Following the *New Orleans Public Service Case,* the Fifth Circuit found in *Chevron USA, Inc. v. Traillour Oil Co.,* 987 F.2d 1138 (5th Cir. 1993), that a case would be ripe for adjudication notwithstanding the existence of some contingency if either (1) there is a "substantial possibility" that the contingency will occur, or (2) the only questions being presented "are purely legal ones." Id. at 1154.

A similar approach was approved in *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Insurance Co.,* 280 F. 2d 453 (5th Cir. 1960). The Fifth Circuit affirmed the district court's dismissal of American Fidelity's action seeking a declaration that it had no duty to defend or indemnify its insured in an underlying tort action. The district court dismissed the action because, among other reasons, American Fidelity's request was "not appropriate, especially since many of the underlying questions would be litigated" in the underlying action. Id. at 457. The Fifth

Circuit affirmed the district court's dismissal, but in doing so rendered a detailed opinion that American Fidelity did have a duty to defend its insured. After reaching that holding, the Fifth Circuit then addressed the issue of ripeness, holding that the district court properly "decline[d] to express legal opinions on academic theoreticals which might never come to pass." Id. at 461. In reaching this holding, the Court relied upon the fact that the underlying action could resolve favorably for the insured, rendering the issue of who is to pay any judgment moot, and that factual issues would likely be resolved that bore upon the issue of coverage. Id. at 461. In other words, upon resolution of the underlying action, "problems now academic may then be actual." Id. at 461.

Significantly, the opinion in *American Fidelity* subsumed the issue of whether the district court had the discretion to hear the declaratory action, using jurisdictional language to affirm the district court's dismissal and finding that the indemnity issue did not present a proper case or controversy to permit exercise of subject matter jurisdiction. Id. at 461. While the district court relied upon its discretion to dismiss the action, the Fifth Circuit actually found that it had none to exercise.

Additional Fifth Circuit cases have also upheld *American Fidelity's* finding of lack of subject matter jurisdiction in the declaratory judgment context. *In re Prestige Farms v. Board of Supervisors of Noxubee County*, 205 F.3d 265, 268 n. 6 (5th Cir. 2000); *Allstate Insurance Co. v. Employers*

7

*Liability Assurance Corp.,* 445 F.2d 1278, 1281 (5th Cir. 1971).[3]  Courts in the Eastern District also follow

the holding in *American Fidelity. Tyznik v. Coleman American Moving Services, Inc.,* 1993 WL 330009

(E.D. La..).[4]

In the *Allstate* case, the Fifth Circuit stated that "no action for declaratory relief will lie to

establish an insurer's liability in a policy clause contest such as the one at bar until a judgment has been

rendered against the insured since, until such judgment comes into being, the liabilities are contingent and

may never materialize." Id. at 1281.  Although the instant case does not involve a policy clause  contest

in  the direct sense, the *American Fidelity* and *Allstate* rationale still applies as B&W's liability and

damage exposure remain contingent and uncertain until finally resolved in the Underlying Case.  Indeed

this case is even more contingent and abstract than the *Allstate* case.  First, until there is a judgment

---

[3]Courts in other jurisdictions have held similarly. *Highland Industrial Park, Inc. v. BEI Defense Systems Co.,* 357 F. 3d 794, 799 (8th Cir. 2004)(claim for breach of contractual covenant of indemnity not ripe until payment is made by indemnitee); *Auto-Owners Insurance Co. v. Toole,* 947 F.Supp. 1557, 1565-66 (M.D. Ala. 1996); *Nationwide Insurance Co. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995); *Ernst & Young v. Depositors Economic Protection Corporation,* 862 f. Supp. 709, 713-14 (D. R.I. 1994); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d *334, 338 (7th Cir. 1992); U.S. Fire Ins. Co. v. Beltmann North American Co., Inc.,* 703 F.Supp. 681, 683-84 (N.D. Ill. 1988); *Great Northern Paper Company v. Babcock & Wilcox Company,* 46 F.R.D. 67, 70 (N.D. Ga. 1968).

[4]Other courts have taken issue with the language of *American Fidelity* that purports to pose a jurisdictional bar to claims for indemnity made prior to judgment or settlement of an underlying claim. Those courts, however, agree that the facts in *American Fidelity* provided ample justification for the court's discretionary refusal to grant declaratory relief and have applied or distinguished the holding of that case accordingly.  *Employers Mutual Casualty Company v. All Seasons Window & Door Mfg., Inc.,* 387 F. Supp.2d 1205, 1210-12 (S.D. Ala. 2005); *American States Ins. Co. v. Bailey,* 133 F.3d 363, 369 n.14 (5th Cir. 1998).

against the insured in the Citgo litigation which is greater than $250,000,000, the potential liability of

Starr is contingent and may never materialize.  Then, assuming such a judgment is rendered in the Citgo

litigation, any potential liability of Defendants is contingent and may never materialize until there is a

judgment that Starr is not liable on its policy.  In order for B&W to proceed against McGriff, there must

first be findings of (1) a judgment in the Underlying Case that exceeds $250,000,000 and (2) a judgment

that the Starr policy does not provide coverage for such judgment.  Without both of these events first

occurring, the potential liability of Defendants is speculative, contingent, and uncertain.

a.      Fitness of the Issues for Judicial Decision

As is evident from the allegations of B&W's First Amended Complaint, the existence of

Defendants' potential liability is contingent upon the ultimate outcome of the Underlying Case.  If B&W

succeeds in defeating the Citgo Plaintiffs' claims or a judgment is entered  for less than the third layer

excess threshold, B&W will have no claim against Defendants.  Therefore, any ruling made by this Court

on the prospective effect of a possible judgment against B&W - one which may never come to pass -

would be premature.

Moreover, even if there were a substantial possibility of a judgment against B&W large enough to

involve Starr's layer of excess insurance, the Court could only guess as to the particular facts and claims

on which the judgment would rest.  The claims involved in the Underlying Case are not etched in stone.

Under Illinois law, the Citgo plaintiffs may seek to withdraw certain claims and add different and unique

claims at any time prior to final judgment.  See 735 ILCS 5/2-616.  Those claims may or may not trigger

the Starr layer and, in fact may not trigger any insurance coverage at all if they are not covered or fall

9

within an exclusion. Therefore, because the prevailing claims in the Underlying Case may be different than those alleged at the time of trial, any court order involving the presently pending claims would be purely advisory.[5] *Guaranty Nat. Ins. Co. v. North River Ins. Co.,* 909 F. 2d 133, 137 (5th Cir. 1990) (despite pleadings in the underlying case alleging covered and excluded claims, the jury's findings on causation controlled which claims were covered under the policy).

The issues that B&W presents for declaration are based upon multiple contingencies: that "if" the Underlying Case results in a judgment against B&W, and "if" the claims currently alleged against B&W form the basis of that judgment, and "if" the amount of any judgment is within Starr's excess layer, and "if" notice to Starr of the Citgo claim was not timely or adequate, then B&W would face exposure for amounts in excess of insurance coverage for which it seeks to hold Defendants liable under various theories of recovery recited in its Complaint. The "ifs" of B&W's foundation will not be cemented in until final resolution of the Underlying Case and determination of the notice issue involving the Starr excess layer. In this case, B&W is asking the Court to construe the relationship between B&W and McGriff without finding the necessary facts, amounting to an advisory opinion that is constitutionally forbidden.

---

[5] Indeed, B&W has filed a third-party action against the prior owner of the Lemont refinery, Unocal, alleging that Unocal's acts or omissions are responsible in whole or in part for the fire. The trial court dismissed B&W's third-party claims; however, B&W has appealed that ruling to the Appellate Court of Illinois, First Judicial District, No. 05-3827. Briefing is complete. Oral argument has been requested.

The prevailing case authorities thus apply the Supreme Court's directive that "for a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Ashcroft v. Wattis,* 431 U.S. 171, 172, 97 S.Ct. 1739, 1740 (1977). There are no "established facts" in the case at bar upon which this Court can base a concretely reasoned opinion. Liability, damages and, for that matter, the adequacy and timeliness of notice to Starr, have yet to be determined and are more appropriately determined in the Underlying Case and through ancillary third-party or direct actions. This action must be dismissed.

**b.     Hardship to the Parties of Withholding Court Consideration**

The second part of the ripeness inquiry focuses on the hardship that may be entailed in denying judicial review. In order to prevail on this issue, the plaintiff must show that the hardship is "immediate, direct and significant." *Consolidated Coal Co. v. Federal Mine Safety and Health Review Com'n,* 824 F.2d 1071, 1077 (D.C.Cir. 1987); *State Farm Auto Ins. Co. v. Dole,* 802 F.2d 474, 480 (D.C. Cir. 1986)("hardship will be found wanting if there are too many 'ifs' in the causal chain..."), *cert denied sub nom. New York v. Dole,* 480 U.S. 951 (1987).

The hypothesized harm here - the possibility that there might be a judgment against B&W within Starr's layer of coverage - is not direct or immediate. The mere possibility that B&W may suffer a financial loss in the future does not satisfy the hardship requirement. *California Dept. of Educ. v. Bennett,* 833 F.2d 827, 833-4 (9th Cir. 1987)(hardship must also entail more than "possible financial

loss"). The facts of this case do not evidence a harm of substantial possibility to warrant declaratory relief.

c.    B&W's Claims for Actual Damages or Indemnity are Premature

B&W's First Amended Complaint does not even attempt to assert actual loss that would serve as a basis for declaratory relief.  Instead, it asserts that to the extent that it is found liable for damages in excess of insurance coverage in the Underlying Case it "will suffer damages as a proximate result" of Defendants' acts or omissions. This Court's resources should not be engaged in crafting an award for B&W's hypothetical losses.

Further, it is well settled that a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment. *American Sheet Metal, Inc. v. EmKay Engineering, Inc.,* 478 F. Supp. 809, 814 (E.D. Cal. 1979); *United States Healthcare, Inc. v. O'Brien,* 868 F. Supp 607, 615 (S.D.N.Y. 1994) (plaintiff's cause of action for a declaratory judgment that it is entitled to reimbursement from future judgments in favor of the defendants was premature because no such judgments may ever be awarded). Even where there is a contractual duty to indemnify - and there is none in the instant case between B&W and the Defendants - the courts have held that no actual controversy exists in an action by the indemnitee against the indemnifying party until actual liability is found against the indemnitee. *Ticor Title Ins. Co. of Cal. v. American Resources,* 859 F.2d 772, 777 at n. 7 (9th Cir. 1988).

II.    Alternatively, the Court Should Abstain and Dismiss or Abstain and Stay These Proceedings Pending Resolution of the Underlying Case and B&W's Claims Against Starr.

Even if a suit otherwise satisfies subject matter jurisdiction prerequisites, district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S. Ct. 2137, 2140 (1995); *Century Surety Co. v. Charles,* 2005 WL 1309261, *1 (E.D. La. 2005). Federal courts should forego jurisdiction in declaratory judgment actions "when considerations of judicial economy overwhelm."

It is obvious that no declaratory relief can be granted herein without a finding of liability in the Underlying Case against B&W and an award of damages in excess of the amount stipulated in the JSA. These are the very issues that are proceeding to trial in Illinois. As well, B&W has acknowledged its commitment to pursuing its claim against Starr through the JSA and in its bankruptcy filings and this may be accomplished either by the institution of proceedings against Starr by B&W or the filing of a direct action by the Citgo Plaintiffs in the event of a judgment in excess of available insurance limits. Indeed, B&W's obligations under the JSA are **conditioned** upon either B&W or the Citgo Plaintiffs pursuing a claim against Starr. This Court should await a final resolution of the foregoing contingent issues before attempting to adjudicate B&W's claims against McGriff.

This Court need look no further than the allegations of the First Amended Complaint to determine whether to exercise jurisdiction. B&W may prevail in the Underlying Case on the issue of liability; the Citgo Plaintiffs' damages may be substantially reduced to an amount within insurance coverage limits below the threshold for applicability of the Starr policy and the issue of whether Starr was properly notified of the claim may be decided in B&W's favor. A favorable finding on any one of the foregoing issues would render B&W's claims against Defendants moot and the Court would never have to

13

reach the issues before it today. Further, the Court could very well issue a declaratory judgment in this proceeding, addressing various insurance, liability and damage issues, only to be faced with contrary findings by a different forum. Such a situation certainly does not evidence "considerations of practicality and wise judicial administration" that must govern this Court's decision to retain this case. 515 U.S. at 288.

Accordingly, this Court should decline to entertain this action and should dismiss this case without prejudice. Alternatively, the Court should enter an administrative stay of this action pending final resolution of the Underlying Case and the final resolution of arbitration proceedings against Starr or the final resolution of a direct action against Starr by the Citgo Plaintiffs.

## III.    This Case Should be Dismissed for Failure to Join a Party Under Rule 19

Federal Rule of Civil Procedure 12(b)(7) allows for dismissal of a claim for failure to join a party under Rule 19. Federal Rule of Civil Procedure 19 states, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (1) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

A Rule 12(b)(7) analysis entails two inquiries under Rule 19. *HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5ᵗʰ Cir. 2003). The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. The Notes of the Advisory Committee on Rules, speaking to the 1966 amendments

to Rule 19(a), state that "New subdivision (a) defines the persons whose joinder in the action is desirable. Clause (1) stresses the desirability of joining those persons in whose absence the Court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter."

If such joinder would destroy the court's jurisdiction or the person cannot be joined, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation[6]. In instances where a party is both necessary and indispensable, the Fifth Circuit has held that the suit should be dismissed. *Pulitzer-Polster v. Pulitzer,* 784 F.2d 1305, 1309 (5th Cir. 1986). Factors to consider under Rule 19(b) include (1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4) whether the plaintiff has another effective forum if the suit is dismissed. *Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 84 (5th Cir. 1997).

Quoting the Committee notes, the trial court in *Prestenback v. Employers' Insurance Companies,* 47 F.R.D. 163, 166-7 (E.D. La. 1969), dismissed a suit by the insured against his insurers for compensation for personal injury, holding that the plaintiff's employer and certain officers and supervisory personnel were indispensable parties. The court analyzed several judgment scenarios and determined that liability issues triggering coverage against the defendant insurers could not be determined in the absence

---

[6] The Starr policy provides that resolution of all claims arising out of, relating to or concerning the policy shall be submitted to binding arbitration in Bermuda.

of those persons allegedly responsible for the plaintiff's injuries. Here, Defendants' liability to B&W cannot be determined in the absence of Starr, the non-party whose refusal of coverage needs to be fully and finally determined before this Court can render complete relief.

There is simply no logic in allowing this action to proceed when critical factual issues determinative of the extent of B&W's liability and the issue of Starr's coverage remain to be resolved. These are not issues that can be determined with any finality by this Court. The extent of B&W's liability is already the subject of the Underlying Case, has been extensively explored through discovery in that case and will likely be set for trial by the Illinois Superior Court later this year. The coverage issue has yet to be pursued by B&W and may yet be pursued in an action by B&W or in a direct action by the Citgo Plaintiffs if they receive a judgment in the Underlying Case in excess of available insurance. In fact, B&W's coverage claim against Starr must be pursued to resolution before B&W becomes liable to pay anything further to the Citgo Plaintiffs pursuant to the terms of the JSA and, ultimately, the amount of any recovery from Starr will determine whether B&W is reimbursed, either in whole or in part, for the $7,500,000 already paid to the Citgo Plaintiffs pursuant to the JSA.

In the instant case, these factors point strongly toward dismissal. First, Starr's absence could be extremely prejudicial to Starr as it has a legally protected interest in the outcome of this litigation and it may be severely restricted in asserting its position with respect to coverage through issue preclusion. In order to find liability against Defendants, the Court necessarily has to make a finding that proper notification of the Citgo claim was not given to Starr. Starr is in the best position to protect its position

16

with respect to this issue but will likely assert that a Bermuda arbitration is the proper forum for such resolution.[7]

Second, there is no method known to Defendants for the Court to fashion a judgment that will protect the interest of Starr and at the same time provide finality to any resolution of this case. Third, for the reasons set forth in Defendants' Rule 12(b)(1) argument above, any judgment entered by this Court will necessarily be contingent and advisory pending final resolution of the Underlying Case and a final determination of Starr's coverage. Fourth, B&W's rights can be adequately protected by resolution of the Underlying Case and by the institution of arbitration proceedings against Starr or the institution of a direct action against Starr by the Citgo Plaintiffs in the event of a judgment in the Underlying Case that exceeds available insurance.

## Conclusion

This Court's declaration will necessarily rely upon the nature of the damages awarded, if any, to the Citgo Plaintiffs in the Underlying Case and whether there is insurance coverage for those damages. Until such damages are awarded and the issue of coverage determined, any declaration by this Court will be based upon pure speculation and conjecture. Therefore, B&W's claims and causes of action must be dismissed for lack of subject matter jurisdiction and/or for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure, or, alternatively, stayed pending resolution of the Underlying Case.

---

[7]Defendants do not contend that the policy arbitration provisions apply to any direct action that may be brought against Starr by the Citgo Plaintiffs. See *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997); *Matter of Talbott Big Foot, inc.*, 887 F.2d 611 (5th Cir. 1989).

Respectfully submitted,

LEMLE & KELLEHER, L.L.P.

Alan H. Goodman (Bar #6131)
Brent C. Wyatt (Bar #25308)
2100 Pan-American Life Center
601 Poydras Street
New Orleans, La.   70130
Phone:  (504) 584-9419
Fax:       (504) 584-9142


ZIMMERMAN, AXELRAD,
MEYER, STERN & WISE, P.C.
Irving C. Stern, *Pro Hac Vice*
Tex. Bar No. 19175500
Kay Carnley Vickers, *Pro Hac Vice*
Tex. Bar No. 03832300
Jennifer S. Wilson, *Pro Hac Vice*
Tex. Bar No. 21697500
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Phone:  (713) 552-1234
Fax:       (713) 963-0859

**Attorneys for McGriff, Seibels & Williams, Inc.
and McGriff, Seibles & Williams of Texas, Inc.**

18

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, a true and correct copy of the foregoing was served by first class mail upon Plaintiff, The Babcock & Wilcox Company and on behalf of its attorneys of record as follows:

Jan M. Hayden
William H. Patrick, III
Warren Horn
HELLER, DRAPER, HAYDEN, PATRICK
  & HORN, L.L.C.
650 Poydras Street, Ste 2500
New Orleans, LA 70130-6103

Neal R. Brendel
Roberta D. Anderson
KIRKPATRICK & LOCKHART
  NICHOLSON GRAHAM, L.L.P.
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA 15222

19