## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | ) | NUMBER 00-10992 |
| | ) | SECTION "B" |
| THE BABCOCK & WILCOX COMPANY, | ) | |
| | ) | CHAPTER 11 |
| DEBTOR. | ) | REORGANIZATION |
| | ) | |

### Jointly Administered With

| | |
|---|---|
| DIAMOND POWER INTERNATIONAL, INC. | 00-10993 |
| BABCOCK & WILCOX CONSTRUCTION CO., INC. | 00-10994 |
| AMERICON, INC. | 00-10995 |

### JOINT STIPULATION AND ACCORD

**Parties To This Joint Stipulation and Accord And Procedural Background**

1.    Debtor The Babcock & Wilcox Company ("B&W") is a Delaware corporation that, prior to 1982, manufactured and sold pipe fittings.

2.    Citgo Petroleum Corporation ("Citgo") is a Delaware corporation and oil refining and marketing company that owns and operates a Lemont, Illinois oil refinery (the "Illinois Refinery").

3.    PDV Midwest Refining L.L.C. ("PDVMR") is a Delaware limited liability corporation and wholly owned indirect subsidiary of Citgo. PDVMR owned the Illinois Refinery during the subject time period.

4.    On August 13, 2003, Citgo and PDVMR, along with their subrogated insurers, filed a lawsuit captioned *Citgo Petroleum Corp. et al v. McDermott Int'l, Inc. et al.*, No. 03 L 009812, pending in the Circuit Court of Cook County, Illinois, Law Division (hereinafter, the

KLE 10873R04 4



"Illinois Lawsuit").   Citgo and PDVMR, along with their subrogated insurers, are referred to collectively herein as "Citgo Plaintiffs."

5.      The Citgo Plaintiffs allege in the Illinois Lawsuit, *inter alia*, that a pipe fitting manufactured and sold by B&W, which was sold in approximately 1981-1982 and installed at the Illinois Refinery, was defectively and negligently manufactured, ruptured on August 14, 2001, and caused a fire and resulting damage at the Illinois Refinery.

6.      Citgo Plaintiffs and their property damage insurers are represented by Donato, Minx & Brown, P.C.   Plaintiffs' business interruption insurance was placed through insurance brokers, Willis and Aon.   The Willis-placed Citgo business interruption portion which represents 30% of the first $75 million and 85% of all amounts excess of $75 million is represented by Donato, Minx & Brown, P.C.   Citgo Plaintiffs and their property damage and business interruption insurers joined in the original filing of the Illinois lawsuit on August 13, 2003 as subrogated insurers of Citgo.   The Aon-placed Citgo business interruption portion which represents 70% of the first $75 million and 15% of all amounts excess of $75 million is represented by Christensen & Ehret, LLP, which intervened in the Illinois lawsuit as Certain Underwriters at Lloyds, London and Interested Insurers Subscribing to Policy Numbers EE-9900005-38, EE-9900005-44, EE-9900005-45, and EE-9900005-46 (hereinafter, the "Lloyd's Intervenors").   All subrogated insurers, including Lloyd's Intervenors, sold, issued, participated in, or subscribed to, directly or indirectly, business-interruption insurance held by the Citgo Plaintiffs.   On March 11, 2005, Lloyd's Intervenors were granted leave to intervene in the Illinois Lawsuit as subrogation plaintiffs.

7.      On October 17, 2005, the Citgo Plaintiffs filed a Second Amended Complaint.

8.      B&W has answered Citgo Plaintiffs' and Lloyd's Intervenors' complaints and has denied any and all liability in the Illinois Lawsuit and continues to deny all such liability, and

2

KAH 1687346 6

nothing in this Joint Stipulation shall diminish, impair or affect B&W's defenses and denial of liability in the Illinois Lawsuit.

9.     McDermott International, Inc., a Panamanian corporation, McDermott Incorporated, a Delaware corporation, J. Ray McDermott, S.A., a Panamanian corporation and J. Ray McDermott, Inc., a Delaware corporation (collectively, the "McDermott Entities"), are non-debtor affiliates of B&W who originally were named as co-defendants along with B&W in the Illinois Lawsuit.

10.     On October 18, 2004, the McDermott Entities were dismissed from the Illinois Lawsuit via an agreed order, but without prejudice to re-file, thus making it necessary for the McDermott Entities to receive a full and final release herein.

11.     B&W, the McDermott Entities, the Citgo Plaintiffs, and the Lloyd's Intervenors collectively are referred to herein as the "Parties."

### B&W's Insurers And Additional Relevant Entities
### Not Parties To This Joint Stipulation and Accord

12.     B&W has up to $375 million in insurance coverage potentially applicable to the Illinois Lawsuit in excess of a $2 million self-insured retention/deductible, in the event of a finding of liability.  The $375 million in insurance coverage is for the policy year beginning January 1, 2003 through January 1, 2004 and is divided into four layers of claims-made insurance, each reflected by separate insurance policies:

   • The first layer of coverage ($25 million in excess of the $2 million retention/deductible) was issued or subscribed to by Certain Underwriters at Lloyd's, London ("Underwriters") under Cover Note No. MS-S1426/ policy AK0300697 ("First Layer Policy")

- The second layer of coverage ($175 million in excess of $25 million) was issued or subscribed to by Underwriters under Cover Note No. MS-S1427/ policy # AK0300008 ("Second Layer Policy")

- The third layer of coverage ($125 million in excess of $200 million) was issued by Starr Excess Liability Insurance Limited ("Starr") under policy # 200894 ("Third Layer Policy")

- The fourth layer of coverage ($50 million in excess of $325 million) was issued or subscribed to by American Home Assurance Company and Navigators Insurance Services of Texas, Inc. (collectively, "AHAC") under policy # C1874 (the "Fourth Layer Policy").

13. The First Layer Policy, Second Layer Policy, Third Layer Policy, and Fourth Layer Policy collectively are referred to herein as the "Excess Policies."

14. Underwriters, Starr and AHAC collectively are referred to herein as the "Excess Insurers."

15. By letter dated June 17, 2005, Starr denied coverage for the Illinois Lawsuit based on allegedly insufficient notice. By letters dated July 1, 2005 and July 28, 2005, B&W informed Starr that notice had been provided in accordance with the terms of the Third Layer Policy and applicable law, and requested that Starr retract its denial of coverage. As of the date of the filing of this Joint Stipulation and Accord ("Joint Stipulation"), Starr has refused to retract its denial of coverage.

16. McGriff Seibels & Williams, Inc. and McGriff Seibels & Williams, of Texas Inc. (collectively, along with their affiliates, parents and insurers, "McGriff") has provided

4

professional insurance brokering and consulting services to B&W in connection with the placement and claims handling and administration of commercial insurance coverages, including the insurance coverage applicable to the Illinois Lawsuit.  On September 1, 2005, B&W filed an adversary complaint against McGriff in this Court, Adversary No. 05-01225 (the "Adversary Proceeding"), alleging, *inter alia*, that McGriff's negligence and breach of fiduciary duty exposed B&W to potential uninsured liability in the Illinois Lawsuit.  B&W seeks a declaration of McGriff's obligation to compensate B&W for uninsured exposure, damages and injunctive relief.

### Prior Positions Of The Parties And Reservations of Rights

17.    B&W contends that the claims asserted against B&W in the Illinois Lawsuit arose pre-petition under section 101(5)(A) of the Bankruptcy Code and are therefore: (1) barred by the Citgo Plaintiffs' and Lloyd's Intervenors' failure to file a proof of claim prior to the January 15, 2003 bar date applicable to such claims; (2) properly classified and treated as General Unsecured Claims pursuant to the Joint Plan of Reorganization as of September 28, 2005, as amended through November 10, 2005 (the "Sept. 28 Plan"); and (3) automatically stayed by Debtors' February 22, 2000 petition in these proceedings (*see* 11 U.S.C. § 362).

18.    The Citgo Plaintiffs and Lloyd's Intervenors contend that the claims asserted against B&W in the Illinois Lawsuit arose post-petition under the Bankruptcy Code and therefore: (1) are not automatically stayed; (2) are not affected by the January 15, 2003 bar date; and (3) are classifiable as Administrative Expense Claims as defined by Article 1.1.2 of the Sept. 28 Plan and thus payable in full pursuant to Article 2.1 of the Sept. 28 Plan.

19.    On March 10, 2005, B&W filed with this Court a Motion to Enforce the Automatic Stay, to which Citgo Plaintiffs and Lloyd's Intervenors have objected.  B&W's Motion to Enforce the Automatic Stay is awaiting hearing, having been continued to February 13, 2006.

5

20.    B&W, the Citgo Plaintiffs, and Lloyd's Intervenors ultimately reached a Court-approved agreement allowing discovery and pre-trial activities to continue in the Illinois Lawsuit until December 1, 2005 (which has subsequently been extended through February 13, 2006 by agreement) without prejudice to the positions, claims and defenses of the Parties with respect to B&W's Motion To Enforce The Automatic Stay.

21.    If this Joint Stipulation is not executed by the Parties and approved by the Court, or if the Sept. 28 Plan does not become effective, B&W expressly reserves, and does not waive, its right to assert that the Illinois Lawsuit Claims arose pre-petition under the Bankruptcy Code (and are therefore subject to an automatic stay in bankruptcy, subject to the January 15, 2003 bar date, subject to disallowance for failure to file a proof of claim before that bar date, and/or are classifiable as General Unsecured Claims under the Sept. 28 Plan).

22.    If this Joint Stipulation is not executed by the Parties and approved by the Court, or if the Sept. 28 Plan does not become effective, Citgo Plaintiffs and Lloyd's Intervenors expressly reserve, and do not waive, their right to assert that the Illinois Lawsuit Claims arose post-petition under the Bankruptcy Code (and are thus not affected by the January 15, 2003 bar date) and/or are classifiable as Administrative Expense Claims as defined by Article 1.1.2 of the Sept. 28 Plan and thus payable in full pursuant to Article 2.1 of the Sept. 28 Plan.

23.    A confirmation hearing on the Sept. 28 Plan is scheduled to take place before this Court on December 22, 2005.

24.    The Citgo Plaintiffs and Lloyd's Intervenors had planned to assert one or more objections to the Sept. 28 Plan by the December 16, 2005 deadline to file objections, but have now reached an accord with B&W and the McDermott Entities to resolve such potential objections by way of this Joint Stipulation. If this Joint Stipulation is not executed by the Parties and approved by the Court, pursuant to related agreements among the parties, Citgo Plaintiffs and Lloyd's

6

Intervenors expressly reserve, do not waive, and have the right to object and file, among other things, necessary documents to contest and oppose the Sept. 28 Plan.

25.     B&W had planned to oppose any objections to the Sept. 28 Plan filed by Citgo Plaintiffs and Lloyd's Intervenors on or before the December 16, 2005 deadline, and to seek all appropriate relief from this Court regarding the Citgo Plaintiffs' and Lloyd's Intervenors' claims, including disallowance of those claims, but have now reached an accord with Citgo Plaintiffs and Lloyd's Intervenors to resolve such potential objections by way of this Joint Stipulation.

### Terms And Conditions Of Settlement Agreement Reflecting Bankruptcy Accord Concerning The Treatment Of The Potential Uninsured Portion Of Adverse Judgment On Claims Against B&W And McDermott Entities By Citgo Plaintiffs And Lloyd's Intervenors In Illinois Lawsuit

26.     In consideration of the mutual accord set forth in this Joint Stipulation, and other good and valuable consideration, the Parties hereby stipulate and agree to (a) settle all disputes between them relating to the allowance, priority and payment of the Citgo Plaintiffs' and Lloyd's Intervenors' claims against B&W alleged in the Illinois Lawsuit (the "Illinois Lawsuit Claims"), (b) release and dismiss any and all Illinois Lawsuit claims against the McDermott Entities, and (c) treat the Illinois Lawsuit Claims as follows:

A.      The Illinois Lawsuit Claims will be treated as an Administrative Expense Claim under Articles 1.1.2 and 2.1 of the Sept. 28 Plan, which Administrative Expense Claim shall be Allowed as defined under Article 1.1.4 and paid under Article 2.1 of the Sept. 28 Plan solely on the terms and conditions contained herein.

B.      B&W shall pay $ 7.5 million to the Citgo Plaintiffs and Lloyd's Intervenors (collectively, the "Payees") upon the Effective Date of the Sept. 28 Plan (currently anticipated to be on or about February 22, 2006).

7

C.    In addition to the $ 7.5 million payment, B&W shall pay up to a total of $42.5 million to the Payees, but only upon the complete satisfaction of the following conditions precedent:

    i.    Payees must first obtain a judgment against B&W in the Illinois Lawsuit in an amount in excess of $250 million ("Judgment");

    ii.    In the event of a Judgment, B&W shall pay to Payees, subject to paragraphs 26.C.iii through 26.C.v below, the amount of such Judgment in excess of $250 million, up to a maximum payment by B&W of $42.5 million, in full satisfaction of B&W's uninsured liability for such Judgment. (For example: (a) B&W shall pay Payees nothing in the event of a Judgment of $225 million; (b) B&W shall pay Payees $25 million in the event of a Judgment of $275 million, subject to paragraphs 26.C.iii through 26.C.v below; and (c) B&W shall pay Payees $42.5 million in the event of a Judgment of $300 million, subject to paragraphs 26.C.iii through 26.C.v below).

    iii.    Prior to payment of any part of the $42.5 million described in 26.C.ii (with the limitation specified in paragraph 26.C.iv), B&W and Payees must first exhaust any and all rights and claims they may have against McGriff, Starr and/or ABAC (including without limitation B&W's rights and claims that are asserted in the Adversary Proceeding), including exhaustion of all appeals, with all Parties using good-faith efforts to prosecute any such claims they may have;

NOLB 1057336A.4

iv.    The $42.5 million payment described above shall be reduced by the total sum of any and all recoveries paid by McGriff, Starr or AHAC (Payment of AHAC's policy limits does not apply to reduce the B&W $42.5 million payment obligation) in connection with the Illinois Lawsuit Claims (whether by way of a judgment or a settlement to which B&W consents) and received by the Payees. In addition, if the sum of such recoveries exceeds $42.5 million, Citgo Plaintiffs and Lloyd's Intervenors shall refund the excess over $42.5 million to B&W, up to a total of $7.5 million, less a one-third contingency fee (e.g., $2.5 million) which shall be paid to counsel for Citgo Plaintiffs and Lloyd's Intervenors for recovery of same. (For example: B&W shall be refunded $5 million in the event of recoveries from McGriff, Starr or AHAC in the amount of $50 million); and

v.    This Joint Stipulation must be executed by the Parties and approved by the Court.

D.    In the event that the Underwriters and AHAC elect, in their discretion based on their evaluation of risks, to tender $250 million in insurance limits (the insurance limits potentially available for the Illinois Lawsuit under the First Layer Policy, Second Layer Policy and Fourth Layer Policy) in settlement of the Illinois Lawsuit Claims, B&W agrees to enter into a good-faith, court-approved final judgment against B&W in the Illinois Lawsuit in the amount of $375 million. That final judgment will be subject to the provisions of paragraph 26.C herein. All settling insurers would be given a full and complete release with respect to the Illinois Lawsuit Claims.

9

E.    With the exception of B&W, and subject to the provisions of paragraph 26 (M), Citgo Plaintiffs and Lloyd's Intervenors hereby remise, release and forever discharge all McDermott Entities, including all of the McDermott Entities' respective officers, directors, employees, agents, subsidiaries, affiliates, parents, successors and assigns, from any and all claims, demands, and causes of action, of any kind or description whatsoever, as well as all types of past, present and future damages, known or unknown, direct or derivative, existing or contingent, foreseen or unforeseen, now or hereafter arising, in law or in equity, existing in this or any other jurisdiction, that are related to or were or could have been asserted in the Illinois Lawsuit (the "Released Claims"). The release of the McDermott Entities has no effect on enforcement of B&W's obligations under this Joint Stipulation or the pursuit by Citgo Plaintiffs or Lloyd's Intervenors of the Illinois Lawsuit Claims against B&W.

F.    Citgo Plaintiffs and Lloyd's Intervenors, subject to agreements previously entered into concerning same, hereby waive any and all objections (and potential objections) to the Sept. 28 Plan.

G.    In the event Underwriters and AHAC elect, in their discretion based on their evaluation of risk, to tender to Citgo Plaintiffs and Lloyd's Intervenors $250 million in insurance limits to settle the Illinois Lawsuit Claims as described in paragraph 26(D) above, or if the Illinois Lawsuit proceeds to trial that results in a verdict against B&W in excess of amounts for which insurance coverage has not been denied, then B&W will assign to Citgo Plaintiffs and Lloyd's Intervenors all indemnity and/or contribution claims relating to the Illinois Lawsuit Claims against Union Oil Company of California ("Unocal"). Citgo Plaintiffs and Lloyd's Intervenors stipulate

10

that this provision may not be cited to the court or the jury in the Illinois Lawsuit and does not impair B&W's ability to argue and introduce evidence to the court and jury in the Illinois Lawsuit that, *inter alia*, liability for Unocal's conduct and negligence is assumed by and ascribed to Citgo Plaintiffs and Lloyd's Intervenors, for purposes of determining comparative or contributory negligence or for other purposes, or to impair Citgo Plaintiffs' and Lloyd's Intervenors' ability to argue and introduce evidence to the contrary.

H.    Nothing in this Joint Stipulation affects any amounts that B&W becomes obligated to pay (by way of judgment and/or settlement) for which insurance coverage is available. This Joint Stipulation is expressly limited to B&W's legal obligation to pay any judgment and/or settlement for which insurance is not available. Nothing herein is to be construed as affecting any obligations or rights the Excess Insurers may have under the Excess Policies.

I.    Payment of the $7.5 million pursuant to this Joint Stipulation shall be applied to any applicable self-insured retention or deductible obligation of B&W and, to the extent this amount exceeds any such obligation, to apply to B&W's uninsured liability on the Illinois Lawsuit Claims.

J.    Nothing herein shall limit Payees' rights to recover any additional amounts that are received or become available as a result of any judgment or settlement with respect to claims that have been or may be asserted against McGriff, Starr and/or AHAC.

11

K.    In the event this Joint Stipulation is not (a) executed by the Parties and (b) approved by the Court, the Parties reserve all positions and rights, including those expressly articulated herein.

L.    Citgo Plaintiffs and Lloyd's Intervenors agree that B&W's agreement under this Joint Stipulation to treat the Illinois Lawsuit Claims as an Administrative Expense Claim for purposes of this Joint Stipulation is not an admission of any fault, neglect, or liability, and may not be cited against B&W in the Illinois Lawsuit, in the Chapter 11 Cases (as defined in the Sept. 28 Plan), or for any other purpose in any case, matter or proceeding, with the sole exception that, after this Joint Stipulation has been executed by the Parties, and approved by the Court, the Parties may cite this Joint Stipulation solely in order to enforce the terms contained herein.

M.    This Joint Stipulation is expressly contingent on the occurrence of the Effective Date as defined in the Sept. 28 Plan (currently anticipated to be on or about February 22, 2006). If the Sept. 28 Plan does not become effective, then the Parties' respective agreements under this Stipulation and Accord shall be null and void, will be of no further force or effect whatsoever, and may not be used for any purpose in any case, matter or proceeding.

### Miscellaneous Provisions

27.    This Court retains continuing, sole and exclusive jurisdiction over enforcement of this Joint Stipulation and any and all disputes the Parties may have concerning this Joint Stipulation.

KRE 10173464

28.    The Parties acknowledge that this Joint Stipulation is the result of the compromise resolution of disputed claims and shall never be offered or construed as an admission that any act or omission of any of the Parties, or any entity or person who may be liable by, through or with any of the Parties, was in any way negligent or otherwise culpable, or as evidence of any such matter.

29.    Neither the existence of this Joint Stipulation nor any of its provisions nor the fact and circumstances of its negotiation and drafting shall be used in any litigation as evidence or as an admission or concession of liability or wrongdoing of any nature on the part of any of the Parties, or as an admission or concession by any of the Parties concerning the merits of any claim or defense. This provision does not restrict the rights of the Parties to introduce this Joint Stipulation into evidence in any action in which a Party is seeking to enforce the terms of the Joint Stipulation.

30.    This Joint Stipulation, including any documents referred to herein, constitutes the entire agreement between the Parties. The Parties declare and understand that no promises, inducements, or agreements not herein expressed have been made to induce them and that this Joint Stipulation contains the entire agreement among the Parties and, that the terms of this Joint Stipulation are contractual, and not a mere recital. The Parties represent that they are under no legal disability material to their ability to execute this Joint Stipulation. This Joint Stipulation shall not be the subject of any claim of mistake of fact and is intended to avoid further litigation and to be final and complete.

31.    Any amendments to this Joint Stipulation must be in writing, and must be properly signed and executed by all the Parties to this Joint Stipulation.

32.    This Joint Stipulation may be executed in multiple counterparts, all of which shall constitute one and the same instrument. Facsimile signatures shall have the same force and effect as an original signature.

13

33.     Each person signing this Joint Stipulation on behalf of a Party represents and warrants that he or she has all requisite power and authority to enter into this Joint Stipulation and to implement the transactions herein and is duly authorized to execute this Joint Stipulation on behalf of that Party.   Each Entity making a representation or agreeing to an undertaking on behalf of an Entity represents and warrants that it has all requisite power and authority to make such representation or agree to such undertaking on behalf of such Entity.

34.     Each Party represents that it enters into this Joint Stipulation freely and voluntarily, and with and upon advice of counsel, and that it has read this Joint Stipulation and conferred with counsel with respect to it.  No provision of this Joint Stipulation is to be interpreted for or against any Party because that Party or that Party's representative or counsel drafted such provision.

35.     Except as otherwise set forth in this Joint Stipulation, the Parties shall bear their respective costs and attorneys' fees.

36.     This Joint Stipulation is not intended, and should not be construed, deemed or interpreted, to confer on any person or entity not a party hereto, any rights or remedies hereunder, except as otherwise provided expressly herein.

37.     This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and to their respective successors and assigns.

38.     Unless another person is designated, in writing, for receipt of notices hereunder, any and all statements, communications, or notices to be provided pursuant to this Joint Stipulation shall be effective upon receipt, shall be in writing, and shall be sent to the following by (i) facsimile or email (as a .pdf attachment) delivery and (ii) overnight courier delivery:

14

If to B&W:

    The Babcock & Wilcox Company
    757 N. Eldridge Pkwy.
    Houston, TX 77079
    Attn:  John T. Nesser, III
          Executive Vice President, General Counsel and Corporate Secretary

    With a copy to:

    John Donley, Esq.
    Kirkland & Ellis
    200 East Randolph Drive
    Chicago, IL 60601

If to the McDermott Entities:

    McDermott International, Inc.
    757 N. Eldridge Pkwy.
    Houston, TX 77079
    Attn:  John T. Nesser, III
          Executive Vice President and General Counsel and Corporate Secretary
          of McDermott International, Inc.

    With a copy to:

    John Donley, Esq.
    Kirkland & Ellis
    200 East Randolph Drive
    Chicago, IL 60601

If to Citgo Plaintiffs:

    Randy G. Donato
    Brook F. Minx
    Robbie A. Mochimann
    3200 Southwest Freeway, Suite 2310
    Houston, TX  77027-7523

KAE !017J664-4

If to Lloyd's Intervenors:

        Mark E. Christensen
        Christensen & Ehret, LLP
        222 West Adams, 21st Floor
        Chicago, IL  60606

Dated:  December 21, 2005

K&E 10975348.4

Respectfully submitted,

KIRKLAND & ELLIS LLP

John Donley
Theodore L. Freedman
200 East Randolph Drive
Chicago, IL 60601
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

Counsel for the B&W and McDermott Entities


HELLER, DRAPER, HAYDEN,
  PATRICK & HORN, L.L.C.

William H. Patrick, III
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone:     (504) 568-1888
Facsimile:     (504) 522-0949

Counsel for the Debtors and Debtors In
Possession


DONATO, MINX & BROWN, P.C.

Randy G. Donato
Brook F. Minx
Robbie A. Moehlmann
3200 Southwest Freeway, Suite 2310
Houston, TX 77027-7523
Telephone:     (713) 877-1112
Facsimile:     (713) 877-1138

Counsel For Citgo Plaintiffs

MCGLINCHEY STAFFORD, P.L.L.C.

Rudy J. Cerone
643 Magazine Street
New Orleans, LA 70130-3477
Telephone:   (504) 586-1200
Facsimile:   (504) 596-2800

Counsel For Citgo Plaintiffs


CHRISTENSEN & EHRET, LLP

Mark E. Christensen
Christensen & Ehret, LLP
222 West Adams, 21st Floor
Chicago, IL 60606
Telephone:     (312) 634-1014
Facsimile:     (312) 634-1018

Counsel For Lloyd's Intervenors

KAE 1:0173044-4

12/21/2005 17:14 FAX   713 877 1128        DONATO_MINK_BROWN                    ☒018/019

**CITGO Plaintiffs**

Plaintiffs Citgo Petroleum Corp. and PDV
Midwest Refining L.L.C.

By: _____

Date: _____
    December 21, 2005

Intervening Plaintiffs Certain Underwriters at
Lloyd's, London and Interested Insurers
Subscribing to Policy Numbers EB-9900005-38, S-
44, S-45 and S-46 ("Lloyd's Intervenors")

By: _____

Date: _____

**B&W**

The Babcock & Wilcox Co.

By: _____

Date: _____
    December 21, 2005

**McDermott Entities**

McDermott International, Inc.
J. Ray McDermott, S.A.
J. Ray McDermott, Inc.
McDermott Incorporated

By: _____

Date: _____
    December 21, 2005

18

**CITGO Plaintiffs**

Plaintiffs Citgo Petroleum Corp. and PDV
Midwest Refining L.L.C.

By: _____

Date: _____


Intervening Plaintiffs Certain Underwriters at
Lloyd's, London and Interested Insurers
Subscribing to Policy Numbers EB-9500005-38, 5-
44, 5-45 and 5-46 ("Lloyd's Intervenors")

By: _____

Date: December 21, 2005


**B&W**

The Babcock & Wilcox Co.

By: _____

Date: _____


**McDermott Entities**

McDermott International, Inc.
J. Ray McDermott, S.A.
J. Ray McDermott, Inc.
McDermott Incorporated

By: _____

Date: _____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE                                          NUMBER
THE BABCOCK & WILCOX COMPANY                   00-10992
                                               SECTION "B"
DEBTOR(S).

<u>Jointly Administered with</u>

DIAMOND POWER INTERNATIONAL, INC.              00-10993
BABCOCK & WILCOX CONSTRUCTION CO.,             00-10994
INC. AMERICON, INC.                            00-10995

## JOINT MOTION TO APPROVE AGREEMENT TO MODIFY THE AUTOMATIC STAY

NOW INTO COURT, through undersigned counsel, come The Babcock & Wilcox Company ("B&W"), Citgo Petroleum Corporation ("Citgo"), PDV Midwest Refining, L.L.C. (collectively with Citgo, "Citgo") and Certain Underwriters at Lloyd's London and Interested Insurers subscribing to Policy Numbers EE9900005-38, EE9900005-44, EE9900005-46 and EE990000-48 ("London"), who, through the above-captioned joint motion (the "Joint Motion"), move the Court for approval of an agreement among the parties to modify the automatic stay, for the following reasons:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Joint Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1408.

3.     The statutory predicate for the relief sought herein is 11 U.S.C. §§ 105 and 362.

4.     This motion is a contested matter governed by Rules 4001(d), 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

131484v1 · RD



## BACKGROUND

5.      B&W and certain of its subsidiaries (collectively with B&W, the "Debtors") filed for voluntary relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") on February 22, 2000 (the "Petition Date").

6.      On August 13, 2003, Citgo filed suit against B&W in Illinois state court, in a lawsuit captioned *Citgo Petroleum Corp., et al. v. McDermott Int'l Inc., et al.*, Cause No. 03-L 009812 (Cook County Cir. Ct., Law Div.) (the "State-Court Lawsuit"), alleging that a purportedly defective pipe fitting sold by B&W ruptured, allegedly causing a fire at a refinery owned by Citgo, and allegedly causing substantial property damage, lost profits, business interruption losses and other alleged damages.  B&W has denied, and continues to deny, any liability whatsoever in the State-Court Lawsuit.

7.      Between March 2 and March 11, 2005, London sought and was granted leave to intervene as a plaintiff in the State-Court Lawsuit, claiming that London is entitled to recover from B&W unquantified "business interruption losses" it paid to Citgo in connection with the fire.

8.      B&W informed Citgo and London that, pursuant to § 362 of the Bankruptcy Code, the Debtors' filing of the voluntary petitions on the Petition Date, and this Court's entry of the Order for Relief on February 22, 2000, stayed the State-Court Lawsuit because it constitutes the commencement or continuation of a judicial, administrative or other action or proceeding against the Debtors in order to recover a claim against the Debtors that arose before the Petition Date, or an act to obtain possession of or exercise control over property of the Debtors' estate. Citgo and London have denied, and continue to deny, that the bankruptcy filings stayed the State-Court Lawsuit.

2

9.      On March 8, 2005, B&W filed a Suggestion of Bankruptcy with the Cook County Circuit Court where the State-Court Lawsuit was filed.

10.     On March 10, 2005, B&W filed a Motion to Enforce the Automatic Stay ("the Stay Motion") against Citgo and London, asking this Court to enforce the automatic stay under § 362(a)(1) of the Bankruptcy Code (the "Stay") to prevent the continued prosecution of the State-Court Lawsuit.

11.     London filed an objection to B&W's Stay Motion on April 19, 2005 (the "London Objection"), and Citgo filed its objection on June 29, 2005 (the "Citgo Objection," and collectively with the London Objection, the "Objections").

12.     The Stay Motion and the Objections were set for hearing on July 7, 2005, but have been reset for December 13, 2005, at 10:00 a.m.

## RELIEF REQUESTED

13.     After notice and, if necessary, a hearing, the parties request this Court to enter an Order herein, pursuant to Bankruptcy Rule 4001(d), approving the parties' agreement to modify the Stay in a limited manner, as set forth below.

## AGREEMENT TO MODIFY THE STAY

14.     The parties to this Joint Motion agree that, to the extent the Stay applies to the State-Court Lawsuit (B&W asserts that the Stay is applicable but Citgo and London deny that it is), the Stay shall be lifted and modified in a limited manner to allow the State-Court Lawsuit to proceed through discovery, pretrial motions and related proceedings until December 1, 2005.

15.     The modification of the Stay agreed to herein and any order entered on the Joint Motion are without prejudice to the positions, claims and defenses of the parties, as set forth in the Stay Motion, the Objections and the State-Court Lawsuit.  Additionally, with

3

respect to the Stay Motion and the Objections, the parties at any time may seek additional or alternative relief, assert additional or alternative defenses and/or (with respect to B&W only) unilaterally convert the Stay Motion to an adversary proceeding. The parties further agree that, notwithstanding anything contained in this Agreement, in the Order entered herein, or in the Objections, B&W may, if it chooses, proceed at any time before December 1,2005 to seek to enforce and/or reimpose the Stay. At the hearing on the Stay Motion and the Objections set for December 13,2005 (or at any later hearing at which the Stay Motion and the Objections may be heard), B&W may proceed under Bankruptcy Rules 9013 and 9014 to seek to have the Bankruptcy Court enforce and/or reimpose the Stay and B&W is not required to seek such relief in an adversary proceeding

## BASIS FOR RELIEF

16.     The Court may approve a compromise agreement if, under the facts and circumstances applicable thereto, the agreement is fair and equitable and is in the best interests of the estate. *Protective Committee for Independent Stockholders of TMT Trailer Feny, Inc. v. Anderson,* 390 U.S. 414 (1968); *Matter of AWECO, Inc.,* 725 F.2d 293, 297-98, (5th Cir.), *cert. denied,* 469 U.S. 880 (1984); *Matter of Foster Mortgage Corp.,* 68 F.3d 914, 917 (5th Cir. 1995).

17.     The parties' agreement to modify the Stay, as set forth in this Joint Motion, is both fair and equitable and is in the best interests of these estates.

18.     The agreement is for a limited duration and merely allows the State-Court Lawsuit to proceed through discovery and other pre-trial matters until December 1,2005, but does not extend to trial on the merits or enforcement of any judgment obtained against property of the estate. It also preserves the rights of B&W, notwithstanding this Order, and the Objections, to urge the Court to enforce and/or reimpose the Stay prior to

4

December 1, 2005, if B&W chooses, and to maintain its position that the claims asserted in the State-Court Lawsuit are pre-petition claims. Finally, the agreement obviates the costs and uncertainties associated with litigating the Stay Motion and the Objections at the current time.

### NOTICE AND HEARING

19.     Bankruptcy Rule 4001(d)(2) provides that notice of this Joint Motion and the time within which objections may be filed and served shall be mailed to certain specified parties and that, unless the court fixes a different time, objections may be filed within fifteen (15) days of the mailing of the notice.

20.     The Debtors will mail the notice required by Rule 4001(d)(2) to all persons and governmental units listed on the Debtors' standard service list used in this case, which service list includes parties far in excess of those required to be served under Rule 4001(d)(2).

21.     Bankruptcy Rule 4001(d)(3) provides that, if no objection is filed to this Joint Motion, this Court may enter an order approving or disapproving the agreement embodied herein without conducting a hearing.  That rule further provides that, if an objection is filed, or if the court determines that a hearing is appropriate, the court shall hold a hearing on not less than five (5) days' notice to the objector, the movants, the parties on whom service is required by Rule 4001(d)(1) and such other parties as the court may direct.

22.     The Debtors will include in the notice required by Rule 4001(d)(2) a date for a hearing on the Joint Motion that is at least five (5) days after the fifteen (15) day objection period specified in Rule 4001(d)(2). The parties hereto request that the Court

hold such hearing if, and only if, an objection to this Joint Motion is filed within that fifteen (15) day objection period.

23.     Bankruptcy Rules 4001(d)(1), (2) and (3) permit the court to vary the notice and hearing requirements set forth therein. The parties hereto respectfully request that this Court find and conclude that the notice and hearing provisions set forth hereinabove or as otherwise approved by the Court at the hearing on the Joint Motion are adequate and appropriate under the circumstances.

**CONCLUSION**

24.     For all of the foregoing reasons, the parties respectfully request that this Court enter an order approving the foregoing agreement of the parties to modify the Stay, and granting to the parties such other and further legal and equitable relief to which the parties may be entitled in the premises.

25.     The parties further request that this Court find and conclude that the notice and hearing provisions set forth hereinabove or as otherwise approved by the Court at the hearing on the Joint Motion are adequate and appropriate under the circumstances of this case.

Respectfully submitted, this 28th day of July, 2005.

Heller, Draper, Hayden, Patrick & Horn, L.L.C.          McGlinchey Stafford, P.L.L.C.


/s/ William H. Patrick, III                             /s/ Rudy J. Cerone
William H. Patrick, III (#10359)                        Rudy J. Cerone (#14137)
Jan M. Hayden (#6672)                                   643 Magazine Street
Warren Horn (#14380)                                    New Orleans, LA  70130-3477
650 Poydras Street, Suite 2500                          Telephone:  (504) 586-1200
New Orleans, LA  70130-6103                             Facsimile: (504) 596-2880
Telephone: (504) 568-1888
Facsimile: (504) 522-0949


--and--                                                 --and--

John Donley                                             Brook F. Minx
Deanna D. Boll                                          Randy Donato
George Sax                                              Robbie A. Moehlmann
Kirkland & Ellis L.L.P.                                 Donato, Minx & Brown, P.C.
200 East Randolph Drive                                 3200 Southwest Freeway, Suite 2300
Chicago, IL  60601                                      Houston, Texas  77027
Telephone: (312) 831-2000                               Telephone: (713) 877-1112
Facsimile: (312) 861-2200                               Facsimile: (713) 877-1138

Attorneys for The Babcock & Wilcox Company              Attorneys for Citgo Petroleum Corp.
                                                        And PDV Midwest Refining, L.L.C.



Christensen & Ehret

/s/ Jack Hsu
Mark Christensen
Jack Hsu
222 West Adams Street
Chicago, Illinois  60606
Telephone: (312) 634-1014
Facsimile: (312) 634-1018

Attorneys for Certain Underwriters of
Lloyd's London

7

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a copy of the above and foregoing has been served upon all parties on the attached service list via United States Mail, postage prepaid and properly addressed on this 28th of July, 2005.  A copy of the Service List will be provided to any party upon request.

/s/ William H. Patrick, III
WILLIAM H. PATRICK, III

8