IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| THE BABCOCK & WILCOX COMPANY, Plaintiff, | Civil Action No. 05-4202 <br> Civil Action No. 06-223 <br> (consolidated) |
| v. | |
| MCGRIFF SEIBELS & WILLIAMS, INC., MCGRIFF SEIBELS & WILLIAMS OF TEXAS, INC., and XYZ INSURANCE COMPANY(IES), Defendants. | Section "J" <br> Judge Carl Barbier <br> Magistrate "1" <br> Judge Sally Shushan |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(B) MOTIONS TO DISMISS

Plaintiff, The Babcock & Wilcox Company ("B&W" or the "Reorganized Debtor"), by and through its undersigned counsel, files the following consolidated response to Defendants' McGriff, Seibels & Williams of Texas, Inc. and McGriff, Seibels & Williams, Inc. (collectively "McGriff" or "Defendant") Rule 12(b) motions to dismiss.

## INTRODUCTION

A full year after the commencement of this action, McGriff has managed to further delay providing a substantive response to B&W's Complaint by filing its present Rule 12(b) motions alleging lack of subject matter jurisdiction and failure to join an indispensable party.[1] McGriff's Rule 12(b) motions are based on misstatements of the facts, misconstruction of applicable legal standards, and are without merit.

Perhaps the most egregious misstatements in McGriff's Rule 12(b) motions—and also those upon which McGriff relies first and foremost in support of its motions—are McGriff's repeated assertions to the effect that this controversy is not ripe for judicial review because B&W might not have any exposure in the underlying litigation and, therefore, might not have any damages claim against McGriff. As is clear from a simple reading of the Complaint, however, B&W has a present claim against McGriff for damages in the amount of *$7.5 million*, which B&W paid to the underlying plaintiffs in connection with the underlying litigation as a result of McGriff's complained of acts and omissions. McGriff is fully aware that B&W presently seeks to recover these damages from McGriff. In addition to the clear allegations in the Complaint, B&W tendered its claim for damages to McGriff by correspondence dated January 19, 2006. *See* Exhibit A. McGriff has refused to reimburse B&W.

---

[1] This action will have been pending for a year when the Court hears argument on Defendant's Rule 12(b) motions. The Court previously considered and rejected as without merit Defendant's prior motion for a more definite statement.

Likewise, McGriff's assertion (unsupported by any pertinent facts or legal authority) that an insurance carrier is an indispensable party to this action likewise lacks merit. This action concerns *McGriff's* duties to B&W, and *McGriff's* acts and omissions that have caused B&W substantial damages—not the acts and omissions of any third party.

McGriff has not identified a single fact or legal authority to this Court that would justify the allowance of its Rule 12(b) motions.

McGriff *repeatedly* has burdened this Court and Plaintiff with unsubstantiated arguments and motions.  Plaintiff submits that McGriff's 12(b) motions are without foundation, and amount to nothing more that a further attempt to delay the filing of a responsive pleading in this matter.

For these reasons and those set forth below, McGriff's 12(b) motions should be denied.

## BACKGROUND

McGriff provided insurance brokering and consulting services to B&W in connection with the placement, claims handling and administration of commercial insurance coverage, including various liability policies of insurance covering the policy period from January 1, 2003 through January 1, 2004. *See* Complaint ¶¶ 23-32.[2] McGriff's duties and obligations to B&W with respect to these policies included providing timely and sufficient notice of claims or occurrences to B&W's insurers. *See id.* ¶ 31.

In September of 2003, B&W was served with a complaint filed in Illinois state court by Citgo Petroleum Corporation and PDV Midwest Refinery, L.L.C., seeking recovery of damages arising out of a fire that took place at its Lemont, Illinois refinery in August of 2001 (the "Citgo claim"). As alleged in the Complaint in this matter, McGriff notified certain of B&W's insurers of the Citgo claim, but apparently did not provide notice to the third layer of insurance, issued by Starr Excess Liability Insurance Limited ("Starr"), until sometime after providing notice to the first and second layers. *See id.* ¶ 31. Starr relied upon this apparent delay as a basis for denying coverage on the claim. *See id.* ¶ 35.[3] Starr's coverage denial in turn caused B&W to lose the benefit of a settlement under which it would have had no uninsured exposure. *See id.* ¶ 39-42. But for McGriff's apparent failure to provide satisfactory notice, B&W could and would have settled the entire Citgo claim in June 2005 with no uninsured exposure whatsoever. *See id.*

---

[2]     B&W commenced this action on September 1, 2005. Following this Court's denial of Defendant's motion for a more definite statement, B&W filed an amended complaint on June 13, 2006 adding Defendants' errors and omissions or professional liability insurance carriers.

[3]     In fact, the first two layers of insurance have retracted their reservations of rights to deny coverage for the Citgo claim (see Exhibit B), leaving B&W with the good faith belief that there would have been no other coverage defenses available to Starr.

Having lost the benefit of the initial settlement, B&W was compelled to enter into an alternative settlement agreement to limit a potential catastrophic uninsured claim. This alternative settlement agreement, set forth in the Joint Stipulation And Accord, which is Exhibit C to the First Amended Complaint (and Exhibit A to McGriff's motion), limited B&W's potential uninsured exposure to $50 million, and was approved by the United States Bankruptcy Court for the Eastern District of Louisiana in the context of the B&W Chapter 11 proceeding on December 22, 2005.

As alleged in the Complaint, B&W seeks from McGriff all amounts that B&W is obligated to pay under the settlement agreement, including the $7.5 million B&W already has paid:

> 47. Under the terms of the Joint Stipulation and Accord, B&W paid $7.5 million to the Citgo claimants shortly after February 22, 2006, the effective date of the Joint Plan of Reorganization. In addition, B&W may be obligated to pay to the Citgo claimants an additional $42.5 million upon the occurrence of certain conditions precedent as set forth in the attached Joint Stipulation and Accord.

> 48. Defendants are liable to Plaintiff for all obligations incurred by B&W under the Joint Stipulation and Accord attached as Exhibit C hereto, including Plaintiff's obligation to pay $7.5 million to the Citgo claimants, as well as any obligation of Plaintiff to pay up to an additional total of $42.5 million upon the satisfaction of certain conditions precedent.

*Id.* ¶¶ 47-48.  B&W has made a demand in writing to McGriff and tendered its initial $7.5 million for payment by correspondence dated January 19, 2006, which is attached as Exhibit A to this response.

In addition, B&W seeks other consequential damages that have already accrued, including its attorneys' fees and costs incurred in negotiating the alternative settlement agreement and obtaining Bankruptcy Court approval of that settlement.

B&W's Complaint against McGriff includes, in addition to a request for a declaratory judgment, claims for negligence, breach of fiduciary duty and breach of contract.

## DISCUSSION

### A.    McGriff's Rule 12(b)(1) Motion Should be Denied Because There Is A Present Case And Controversy

As with any other action, a declaratory judgment suit is ripe for adjudication where an "actual controversy" exists. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). The rule pronounced is that an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* Evaluated under this standard, an actual, justiciable controversy clearly exists between B&W and McGriff.

As the principal basis for its Motion, McGriff asserts that there is no present case or controversy because circumstances may develop such that B&W may suffer no actual loss.  McGriff reiterates this concept repeatedly in support of its Rule 12(b) motions.  For example, McGriff asserts:

5

- Motion at 4:[4]

  "the allegations of the instant case make it clear that there may, ultimately, be no damages awarded in the Underlying Case and that this entire proceeding may prove unnecessary"

- Motion at 9:

  "any potential liability of Defendants is contingent and may never materialize"

- Motion at 11:

  "The mere possibility that B&W may suffer a financial loss in the future does not satisfy the hardship requirement."

- Motion at 12:

  "B&W's First Amended Complaint does not even attempt to assert actual loss that would serve as a basis for declaratory relief."

These statements are misleading and border on farcical. A plain reading of the Complaint and exhibits makes clear that B&W has *already* suffered millions of dollars in actual damages, which B&W presently seeks from McGriff.

---

[4] "Motion" herein refers to Defendant's Memorandum in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction, Or, Alternatively, Motion For Administrative Stay of Suit pending Resolution Of State Court Action And Insurance Coverage Issues; and Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19.

As alleged in the Complaint, McGriff's acts and omissions caused B&W to lose the benefit of a settlement pursuant to which B&W would have had no uninsured exposure for the Citgo claim whatsoever. McGriff's Motion demonstrates understanding that B&W alleges that McGriff's conduct caused B&W to lose "the benefit of a settlement offer that would have limited collection to available insurance limits..." Motion at 3. Instead, B&W was compelled to limit its exposure through an alternative settlement agreement pursuant to which B&W *already* has paid *$7.5 million*. Accordingly, B&W has a present claim against McGriff for damages in the amount of $7.5 million (in addition to a present claim for attorneys' fees and costs), which B&W incurred as a result of McGriff's acts and omissions.[5] B&W has tendered those damages to McGriff. *See* Exhibit A.

Likewise, McGriff's assertions to the effect that B&W's causes of action require both: 1) a judgment in the underlying litigation; and 2) a finding of no coverage for such judgment, *see* Motion at 8-9, misapprehend B&W's causes of action against McGriff, which require neither. B&W's claims against McGriff are not contingent on *any* finding of liability in the underlying case or upon any future findings of liability with respect to Starr. B&W has a present claim for $7.5 million and substantial attorneys' fees and costs. The fact that B&W might suffer *additional* damages in the event of an uninsured judgment in excess of $250,000,000 does not make this dispute premature or speculative.

---

[5]    Defendant states that the $7.5 million "is subject to reimbursement depending upon the amount either B&W or the Citgo Plaintiffs recover against Starr through subsequent settlement, arbitration or direct action." This is inaccurate.

Nor is there any relevance to McGriff's observation that this Court "could only guess as to the particular facts and claims on which [a] judgment [in the underlying Citgo action] would rest." Motion at 9. In the event of a substantial verdict in the underlying action, McGriff's additional liability to B&W would not depend on any "particular facts and claims" of the underlying suit—it would depend simply upon the fact of a plaintiffs' verdict.

McGriff's mischaracterizations aside, this is not a case of a purely abstract or hypothetical dispute—as was the case in the authorities cited by McGriff. *See, e.g., New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir. 1987) (affirming dismissal of a declaratory suit on ripeness grounds where plaintiffs sought to enjoin "future" speculative actions of the New Orleans City Council); *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Fanners' Mutual Cas. Insurance Co.*, 280 F. 2d 453, 458 (5th Cir. 1960) (affirming dismissal where "[n]o one had yet paid or become legally liable to pay" and it was unclear "[w]hether anything w[ould] be paid or be legally payable").

The two cases principally relied on by McGriff—*American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Fanners' Mutual Cas. Insurance Co.*, 280 F. 2d 453 (5th Cir. 1960) and *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir. 1971)—are cases in which the court exercised discretion to decline making determinations regarding the availability of insurance coverage prior to a final determination of the insured's liability. These cases are inapposite because there was no present harm/damages at issue in those cases. [6]

---

[6]    It warrants mention that *Allstate* was simply quoting *American Fidelity* and held that declaratory judgment in that case was appropriate.

Although these cases are not instructive in any event in view of the factual dissimilarities, it is worthy of mention that the Fifth Circuit has more recently held that a justiciable controversy *does* indeed exist for purposes of the Declaratory Judgment Act when "an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citing *Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993)). Likewise, similar declaratory relief would be appropriate where, as here, a broker disputes liability for negligence to the insured in connection with the claims handling associated with an underlying suit.

Nor has McGriff chosen to bring to the Court's attention recent controlling authorities issued by this Court and the Fifth Circuit. Following established United States Supreme Court and Fifth Circuit precedent, this Court, in a recent decision, held that declaratory relief *is* appropriate when a party seeks indemnity coverage prior to final determination of the insured's liability:

> [I]t is well-settled that the determination of insurance coverage is an appropriate issue for declaratory relief under the Declaratory Judgment Act. The same is true where, as here, declaratory judgment is sought regarding coverage in the nature of indemnity insurance prior to a final determination of the liability of the assured.
>
> *****
>
> Judge Gibbons, of the Third Circuit, also has explained why the nature of the duties a liability insurer owes its insured makes such disputes particularly appropriate for early resolution in a declaratory action:

> The respective interests and obligations of
> insured and insurers, when disputed, require
> determination much in advance of judgment
> [against the insured] since they will designate
> the bearer of ultimate liability in the underlying
> cases and hence the bearer of the onus of the
> risks of settlement.

*Sunrise Shipping, Ltd. v. M/V American Chemist*, No. Civ. A. 96-2849, 1998 WL
914263, at*2-*3 (E.D.La. Dec. 30, 1998) (citing *Maryland Casualty Co. v. Pacific
Coal & Oil Co.*, 312 U.S. 270 (1941) and *Exxon Corp. v. St. Paul Fire and Marine
Ins. Co.*, 129 F.3d 781 (5th Cir. 1997) and quoting *ACandS Inc. v. Aetna Casualty
and Surety Co.*, 666 F.2d 819, 823 (3rd Cir.1981)).

This Court in *Sunrise Shipping* noted that "[i]f anything, [*American
Fidelity*] stand[s] for the district court's discretion, within the bounds of Article III,
to determine whether there is a case or controversy." *Id.* at *4. *See also Scottsdale
Ins. Co. v. Bayou Land and Marine*, 1999 WL 777714, at *2 (E.D.La. Sept. 30,
1999) (NO. CIV. A. 98-3668) ("this Court finds that it has jurisdiction to rule on
[plaintiff's] request for declaratory judgment with regard to the [] pending state
court claims, even though the state court has not yet issued a final judgment [] that
action").[7]

---

[7]     *See also Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 2003 WL 22005877, at *3
(N.D.Tex. 2003)("[Defendant] asserts that before judgment has been rendered in the state
court ... any declaratory judgment would be premature. However, this argument fails to
consider Fifth Circuit precedent stating the opposite conclusion. ... Thus, this Court finds
that the scope of insurance coverage is justiciable"); *Jim Johnson Homes, Inc. v. Mid-
Continent Casualty Co.*, 244 F.Supp.2d 706 (N.D.Tex. 2003) ("The requirement in federal
court that an actual controversy exist before a declaratory judgment can be issued is
satisfied in an action such as this even though the arbitration has not proceeded to an
award.").

In any event, these insurance declaratory judgment cases are not instructive because B&W asserts liability claims against McGriff that are *independent* of and in no way contingent upon the underlying Citgo proceedings—and they are claims for which B&W has very substantial present damages. In stark contrast to all authorities relied upon by McGriff, moreover, McGriff's acts and omissions alleged all have *already* occurred, and B&W *already* has suffered concrete injuries as a result of such acts and omissions.   Accordingly, B&W seeks present monetary damages and a declaration that McGriff is obligated to "compensate Plaintiff for all uninsured exposure Plaintiff suffers as a result of the Citgo Claim."

McGriff alternatively requests a stay of these proceedings pending resolution of the state court action and any insurance coverage proceeding against Starr.  A stay would not be appropriate.  Although McGriff makes vague reference to potential "contrary findings by a different forum," Motion at 14, McGriff provides no examples of what such findings might be.  Nor can it because, in fact, there would not be any inconsistent findings.  The underlying suit does not involve the same issues or the same parties.   The underlying action concerns B&W's obligations to the Citgo plaintiffs—McGriff is not a party to that action and there are no allegations concerning McGriff's obligations to B&W in that action.   Whatever the result of the underlying Citgo claim, it will not materially affect the causes of action that B&W has claimed; at most it will crystallize the totality of the damages. No findings in the underlying action will impact upon the causes of action that B&W has asserted in this action, *i.e.*, causes of action for breach of contract and declaratory relief concerning McGriff's duties and obligations to B&W and liability for B&W's damages.

In the present case, the issue of whether the plaintiff has suffered damages is not, as McGriff claims, contingent on any future determination. It is incontrovertible that B&W has suffered damages and there is no reason to delay the adjudication of McGriff's obligations to B&W. The resolution of the Citgo claim may impact the ultimate quantum of damages that B&W may recover from McGriff. However, it will not impact the simple fact that B&W has already suffered damages in the first instance as a result of McGriff's alleged conduct. The fact that there is a range of potential damages is not justification to stay the matter.

An argument similar to one advanced by McGriff in the present case was rejected by the court in *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F.Supp.2d 363 (S.D.N.Y.2004). In *Seippel*, as a result of the defendants' negligent advice, plaintiffs failed to pay appropriate federal and state taxes. *See id.* at 371. Plaintiffs sued defendants for negligent representation. *See id.* Defendants argued that plaintiffs' claims were not ripe for adjudication by the federal district court because there had been no final resolution of plaintiffs' dispute with the IRS and state tax authorities. *See id.* The court found this argument unavailing. According to the court, the fact that plaintiffs may not ultimately owe the tax authorities additional taxes did not mean that their action was not ripe for adjudication. *See id.* The court noted that plaintiffs alleged that they had been damaged, and continued to be damaged, as a result of defendants' conduct. The court concluded that these injuries were "immediate and definite, and therefore satisfy the case or controversy requirement" contained in Article III of the Constitution. *Id.*

Moreover, the court held that "those damages which remain contingent … are the appropriate subject of … declaratory relief." *Id.* B&W in the present case also alleges that as a result of McGriff's conduct, it has been damaged and continues to suffer damages.

12

Indeed, courts routinely adjudicate breach of contract and declaratory judgment actions where the final quantum of damage has yet to be liquidated. *See also Kennard v. Indianapolis Life Ins. Co.*, 420 F.Supp.2d 601, 606-07 (N.D.Tex. 2006) (holding that case was "ripe for judicial resolution" because the plaintiff already suffered damages that were "immediate and definite, so the fact that the other damages ... remain[ed] contingent ... d[id] not make th[e] dispute premature or speculative").

There is a present controversy worthy of judicial review and therefore McGriff's Rule 12(b)(1) motion should be denied.

### B.   McGriff's Rule 12(b)(7) Motion Should be Denied Because Starr Is Not A Necessary Party To This Action

Aside from outlining Rule 19, McGriff does not provide the Court with any facts supporting its position that Starr is a necessary party to this action. McGriff simply relies on conclusory statements to support its position.

Contrary to McGriff's statements, Starr is not a necessary party under Rule 19(a)(1). In addition to the fact that complete relief is available (in the form requested in the Complaint), Starr's ability to protect its interests will not be impaired or impeded by the disposition of this action in its absence. *See* Fed.R.Civ.P. 19(a)(1)(i).

B&W's complaint does not seek—and this Court is not required to provide—*any* findings on insurance coverage issues, including the ultimate validity

of Starr's position with respect to notice. Rather, these issues will be resolved as part of a direct action suit currently pending in Illinois.[8]

Because this lawsuit is only against McGriff, the jury will only have to decide whether McGriff fulfilled its obligations to B&W and, if not, whether McGriff's acts and omissions caused B&W's damages. The jury will not have the opportunity to assign liability to Starr.[9]

Indeed, Starr has nothing to do with this action (much less being a necessary party), which concerns *McGriff's* duties to B&W, and *McGriff's* acts and omissions that have caused B&W substantial damages—not the acts and omissions of any third party. B&W's causes of action against McGriff are independent and their adjudication does not rely on the participation of the insurer. Not surprisingly, broker liability suits routinely proceed as independent claims without insurance carriers added as parties. *See, e.g., Baseball Office of the Comm'n v. Marsh & McLennan, Inc.*, 295 A.D.2d 73 (N.Y. App. Div. 2002) (action considering whether "defendant was responsible for ... failure to give prompt notice to the insurers").

As Starr is not a necessary party under Rule 19(a), Starr cannot be an indispensable party under Rule 19(b).[10]

---

[8]    *Citgo Petroleum Corporation et al. vs. The Babcock & Wilcox Company et al.*, No. 06 L 513 (Illinois Circuit Court – Will County).

[9]    By the same token, under Rule 19(a)(2)(ii), Defendant faces no risk of multiple or otherwise inconsistent obligations as a result of Starr's absence from this action.

[10]   Nor can Starr be joined to this action in any event because as noted by Defendant, B&W's coverage disputes with Starr are subject to arbitration. Assuming *arguendo* that Starr was necessary, this Court should not exercise its discretion under Rule 19(b) to dismiss this action. The balance of factors identified in Rule 19(b) clearly does not weigh in favor of dismissal. First, this action is not in any way prejudicial against Starr. Second, as discussed above, any judgment rendered in Starr's absence will be adequate. Third, Plaintiff would not have an adequate remedy if this action is dismissed for nonjoinder.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) and Motion to Dismiss Pursuant to Rule 12(b)(7).

New Orleans, Louisiana this 22nd day of
August 2006.

Respectfully submitted,

HELLER, DRAPER, HAYDEN, PATRICK & HORN,
L.L.C.

_____
Warren Horn (#14380)
650 Poydras Street, Suite 2500
New Orleans, LA  70130-6103
(504) 568-1888

Of Counsel:

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM LLP

_____
Neal R. Brendel
Roberta D. Anderson
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA  15222
(412) 355-6500

Counsel for the Reorganized Debtor

15

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's

Response To Defendants Rule 12(b) Motions To Dismiss is being served upon the

following by First Class U.S. Mail, postage prepaid, this 22nd day of August 2006:

Alan H. Goodman
LEMLE & KELLEHER, L.L.P.
601 Poydras Street
Suite 2100, Pan-American Life Center
New Orleans, LA 70130
Telephone: (504) 584-9419
Fax: (504) 584-9142


Irving C. Stern
ZIMMERMAN, AXELRAD, MEYER, STERN & WISE, P.C.
3040 Post Oak Blvd., Suite 1300
Houston, TX 77056
Telephone: (713) 552-1234
Fax:      (713) 963-0859

WARREN HORN