IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE BABCOCK & WILCOX COMPANY, §<br>Plaintiff, § § § <br>v. § § <br>MCGRIFF, SEIBELS & WILLIAMS, §<br> INC. and MCGRIFF, SEIBELS & §<br>WILLIAMS OF TEXAS, INC., §<br>Defendants § | Civil Action No. 05-4202<br>Civil Action No. 06-223<br><br>Section "J"<br>Judge Carl J. Barbier<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' RULE 12(b) MOTIONS TO DISMISS**

Defendants McGriff, Seibels & Williams of Texas, Inc. ("MSW Texas") and McGriff, Seibels & Williams, Inc. ("MSW"), referred to sometimes hereinafter as "McGriff," submit this Reply to Plaintiffs' ("B&W") Response to Defendants' Rule 12(b) Motions to Dismiss, and would show the Court the following:

**Introduction**

Perhaps believing that hyperbole will divert the Court's attention from the lack of substance of its Response, B&W accuses McGriff of "misstatements", "misconstruction" and

1

"meritless" requests for relief. Nothing could be farther from the truth.[1]

B&W's accusatory language notwithstanding, the crux of the argument is whether, at the end of the Underlying Case[2] and after having expended all efforts to pursue Starr, either in arbitration or by direct action, B&W will have any out-of-pocket expense whatsoever as a result of the Underlying Case. B&W devotes a substantial part of its Response to the argument that there is a real and present controversy before the Court in that B&W has already expended $7.5 million pursuant to the Joint Stipulation and Accord ("JSA") with Citgo and PDMV (the "Citgo Plaintiffs"). What B&W devotes little attention to and no substantive argument explaining or controverting, is the fact that even the $7.5 million payment is contingent and may be subject to reimbursement according to the formula set forth in Section 26C(iii) and (iv) of the JSA. B&W may attempt to reduce McGriff's contention to a footnote and describe it as inaccurate, but the words and the formula are there in black and white and cannot be ignored. They are the very words created by B&W.

The JSA sets forth the formula for B&W's liability as follows:

26B. B&W shall pay $7.5 million to the Citgo Plaintiffs and Lloyd's Intervenors (collectively, the "Payees") upon the Effective Date of the Sept. 28 Plan {currently anticipated to be on or about February 22, 2006}.

C. In addition to the $7.5 million payment, B&W shall pay up to a total of $42.5 million to the Payees, but only upon the ***complete satisfaction of the following conditions***

---

[1] McGriff would point out that it initially filed a Motion for Extension of Time to respond to B&W's Complaint, a pleading agreed to by B&W, a Motion to Withdraw the Reference, a pleading ultimately agreed to by B&W, and its Motion for More Definite Statement, which the Court not only did not find "meritless" but devoted careful thought to analyzing and deciding. Moreover, substantial time and effort has been devoted to consolidating both this action and the parallel bankruptcy adversary proceeding that B&W thought was necessary and, as a result of circumstances beyond the control of the parties and this Court, this case was reassigned from Judge Porteous' docket. Now, nearly a year down the road from the date of filing its Complaint, B&W seeks to add parties to the suit, an action that will serve to delay any immediate progress towards resolution of the merits of this case.

[2] *Citgo Petroleum Corp, et al v. McDermott Int'l, Inc., et al,* No. 03 L 009812, Circuit Court of Cook County, Illinois County Department, Law Division.

*precedent* (emphasis added):

    i.    Payees must first obtain a judgment against B&W in the Illinois Lawsuit in an amount in excess of $250 million ("Judgment");

    ii.    In the event of a Judgment, B&W shall pay to Payees, ***subject to paragraphs 26.C.iii through 26.C.v below*** (emphasis added), the amount of such Judgment in excess of $250 million, up to a maximum payment by B&W of $42.5 million, in full satisfaction of B&W's uninsured liability for such Judgment…;

    iii.    Prior to payment of any part of the $42.5 million described in 26.C.ii (with the limitation specified in paragraph 26.C.iv), ***B&W and Payees must first exhaust any and all rights and claims they may have against McGriff, Starr and/or AHA…, including exhaustion of all appeals*** (emphasis added), with all Parties using good-faith efforts to prosecute any such claims they may have;

    iv.    The $42.5 million payment described above shall be reduced by the total sum of any and all recoveries paid by McGriff, Starr or AHAC in connection with the Illinois Lawsuit Claims (whether by way of judgment or a settlement to which B&W consents) and received by the Payees.  In addition, if the sum or such recoveries exceeds $42.5 million, Citgo Plaintiffs and Lloyd's Intervenors shall refund the excess over $42.5 million to B&W, ***up to a total of $7.5 million*** (emphasis added), less a one-third contingency fee (e.g., $2.5 million) which shall be paid to counsel for Citgo Plaintiffs and Lloyd's Intervenors for recovery of same.

B&W makes reference in its Complaint and Amended Complaint to a proposed settlement that would have limited collection to available insurance limits and thus reduce its

3

621769_1

uninsured exposure to zero, an end result that is also contemplated by the terms and conditions of the JSA. There is no mention that the proposed settlement between B&W and the Citgo Plaintiffs would require the agreement of B&W's underwriters, that it would have to be uncontested by B&W's bankruptcy claimants or that it would have to be approved by the Bankruptcy Court. B&W's pleadings further fail to explain why the attorneys' fees and costs that purportedly form part of B&W's claim herein would not have been incurred in negotiating and obtaining Bankrutpcy Court approval for *any* settlement of the Underlying Case, including the one that B&W contends that it lost, or in continuing to defend the Underlying Case, a condition to any settlement no doubt insisted upon by B&W's underwriters.

Until the Underlying Case is resolved and a judgment entered, B&W's contingent liability to the Citgo Plaintiffs for the additional $42.5 million[3] cannot be determined and the finality of the $7.5 million payment that figures so prominently in B&W's Response cannot be determined. This is precisely the circumstance that the authorities cited by McGriff in its Memorandum speak to and admonish the trial courts to avoid.

Likewise, B&W's own words have made Starr an indispensable party. Further liability to the Citgo Plaintiffs for the $42.5 million is contingent upon exhaustion of any and all rights and claims against *Starr,* and the finality of B&W's $7.5million payment is contingent upon amounts recovered from *Starr*. Further, if B&W has provided that its ultimate liability to the Citgo Plaintiffs cannot be determined without the pursuit of all rights and causes of action that B&W and the Citgo Plaintiffs may have against *Starr,* then how can it argue that the presence of *Starr* as a party to this suit and the resolution of Starr's refusal of coverage is not also required as a condition to McGriff's liability to B&W? If its liability is contingent, then so, too, is McGriff's.

---

[3] This amount has been further reduced by $2.5 million pursuant to a stipulation between the parties in the Underlying Case that resulted from certain discovery motions.

**Argument and Authorities**

The cases cited by B&W are neither persuasive nor controlling authorities. They are not persuasive because they, for the most part, deal with declaratory actions brought either by insured or insurer seeking a determination of whether an insurer is required to indemnify or defend pursuant to contract. Those cases deal with rights that have been fully developed by contract and are mature and vested. Thus, the courts in these cases did not have to find whether the parties had entered into a contract to indemnify or defend; this issue was not disputed. McGriff is a broker, not an insurer, and there is no contractual provision between B&W and McGriff requiring indemnification or defense of the Underlying Case and, therefore, no *choate* right for this Court to enforce.

*American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Insurance Co.,* 280 F.2d 453 (5th Cir. 1960), which dealt with issues of an insured's duty to indemnify and defend its insured, is no more abstract or speculative than the case at bar. While holding that the insured did have a contractual duty to defend its insured – a legal issue that places *American Fidelity* within the line of cases that B&W cites for the proposition that declaratory relief is appropriate where the court is deciding the issue of an insured's duty to defend – the court further held that the indemnity issue was not ripe for adjudication. See *American States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir. 1998) (where the district court had made a determination that it would decide the issue of the duty to defend and the Fifth Circuit held that it was not an abuse of discretion for the court to deny defendants' motion to dismiss for lack of ripeness and also decide the issue of the insurer's duty to indemnify.); *Western Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311, 315, (5th Cir. 1993)(a case relying upon Texas law and Texas precedent, where the Fifth Circuit upheld the district court's finding that the insurer

621769_1

had no duty to defend and modified the judgment dismissing the insurer's declaratory judgment, stating that if the court correctly decided the duty to defend based upon a policy exclusion then there could be no duty to indemnify following judgment.).[4]

It is interesting to point out to the Court that *Baseball Office of the Commissioner v. Marsh & McLennan, Incorporated,* 742 N.Y.S.2d, 40 (1st Dept. 2002), the only case cited by B&W for the proposition that a court action may proceed against a broker without the addition of the insurance carrier, hurts rather than helps B&W's argument with respect to both the Rule 12(b)(1) and 12(b)(7) Motions.  In the first place, the insurers weren't added to the case as they had previously filed a declaratory action against the insured and had obtained summary judgment that there was no coverage for the underlying claim. Id at 44.  In the second place, the underlying claim had been settled prior to the malpractice action against the broker.  Thus, the insured's liability had been finalized and the issue of insurance coverage had been determined prior to the broker malpractice action, neither of which has occurred in this case.

---

[4] Similarly, the remainder of the cases cited by B&W can be distinguished on the basis that they deal with choate rights governed by contract.  *Sunrise Shipping, Ltd. V. M/V American Chemist,* 1998 WL 914263, at *2, *3 (E.D. La. 1998)(an intervention filed by an injured party against his employer's insurer and a pool of funds resulting from the seizure and sale of the employer's vessel, the district court found that it was no less convenient for the plaintiff to litigate his claims, including the issue of insurance coverage, in federal court rather than in state court and that adjudication of the issue of insurance coverage would further expedite allocation and distribution of the pool of funds to pending maritime claimants.   The following are declaratory actions brought by an insured against its insurer.); *Exxon Corp. v. St. Paul Fire and Marine Ins. Co.,* 129 F.3d 781 (5th Cir. 1997); *ACandS Inc. v. Aetna Casualty and Surety Co.,* 666 F.2d 819, 823 (3rd Cir. 1981; *Fairfield Ins. Co. v. Stephens Martin Paving, L.P.,* 2003 WL 22005877 at *3 (N.D. Tex. 2003) - marked NOT FOR CITATION; *Jim Johnson Homes, Inc. v. Mid-Continent Casualty Co.,* 244 F.Supp.2d 706 (N.D. Tex. 2003)( where the court cited favorably the language in *American States Ins. Co. v. Bailey* that "given that the district court was going to decide the issue of the duty to defend…it was not an abuse of discretion for the district court to also decide the issue of the duty to indemnify."); *Scottsdale Ins. Co. v. Bayou Land and Marine,* 1999 WL 777714 at *2 through *7 (E.D. La. 1999)(the district court stayed the federal declaratory action brought by the insurer against its insureds, stating that issues of liability were best determined in the underlying state court action and the interests of judicial economy favored proceeding to judgment in the underlying case.); *Seippel v. Jenkins & Gilchrist, P.C.,* 341 F.Supp.2d 363, 370 (S.D.N.Y. 2004)(where there was no question of the plaintiffs being refunded the  $6 million in taxes, interest and penalties that they had already paid to the IRS as a result of defendants' conduct,  the district court held that plaintiffs' claims were  justiciable, despite the fact that there had been no resolution of plaintiffs' liability for *further* taxes, penalties and fees); *Kennard v. Indianapolis Life Ins. Co.,* 420 F.Supp.2d 601, 606-7( N.D. Tex. 2006).   This is a different scenario from that presented to this Court where B&W's liability and all of its damages are contingent and unknown.

**Conclusion**

For all of the foregoing reasons and those set forth in McGriff's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, Alternatively, Motion for Administrative Stay of Suit Pending Resolution of State Court Action and Insurance Coverage Issues; and Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19, McGriffs Motions should be granted.

                    Respectfully submitted,

                    LEMLE & KELLEHER, L.L.P.


                    By: __/s/ Alan H. Goodman_____
                          Alan H. Goodman (#6131)
                          Brent C. Wyatt (#25308)
                          2100 Pan-American Life Center
                          601 Poydras Street
                          New Orleans, La. 70130
                          Phone:  (504) 584-9419
                          Fax:     (504) 584-9142
                          Attorneys for Defendants

CO-COUNSEL:

ZIMMERMAN, AXELRAD,
MEYER, STERN & WISE, P.C.

Irving C. Stern, *Pro Hac Vice*
Tex. Bar No. 19175500
Kay Carnley Vickers, *Pro Hac Vice*
Tex. Bar No. 03832300
Jennifer S. Wilson, *Pro Hac Vice*
Tex. Bar No. 21697500
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Phone:  (713) 552-1234
Fax:     (713) 963-0859

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 25, 2006, a true and correct copy of the foregoing was served by first class mail upon Plaintiff, The Babcock & Wilcox Company ("B&W" or the "Debtor") and, on behalf of its attorneys of record as follows:

| | |
|---|---|
| Jan M. Hayden | Neal R. Brendel |
| William H. Patrick, III | Roberta D. Anderson |
| Warren Horn | **KIRKPATRICK & LOCKHART** |
| **HELLER, DRAPER, HAYDEN, PATRICK** | **NICHOLSON GRAHAM, L.L.P.** |
| **& HORN, L.L.C.** | Henry W. Oliver Building |
| 650 Poydras Street, Ste 2500 | 535 Smithfield Street |
| New Orleans, LA 70130-6103 | Pittsburgh, PA 15222 |

                                      __/s/ Alan H. Goodman_____

621769_1