UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE BABCOCK & WILCOX COMPANY                    CIVIL ACTION

VERSUS

NO.  05-4202

MCGRIFF, SEIBELS & WILLIAMS, INC and           SECTION "J"(1)
MCGRIFF, SEIBELS & WILLIAMS OF TEXAS. INC

ORDER AND REASONS

Before the Court is **Defendants McGriff, Seibels & Williams, Inc.'s and McGriff, Seibels & Williams of Texas, Inc.'s Motion to Dismiss For Lack of Subject Matter Jurisdiction, Or, Alternatively, Motion for Administrative Stay of Suit Pending Resolution of State Court Action and Insurance Coverage Issues; and Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19 (Rec. Doc. 21)**, which came before the Court for hearing on August 30, 2006.  Oral argument was waived by the parties, and the matter was submitted for decision on the briefs only.  The Court, having considered the record, the evidence submitted, the law and applicable jurisprudence, finds that this

1

matter should be stayed.

**I.   BACKGROUND**

On February 22, 2000, the Babcock & Wilcox Company ("B&W") and certain of its subsidiaries filed for voluntary relief on Chapter 11, Title 11 of the United States Code.  On or about September 3, 2003, B&W was served with a Complaint (the "underlying case") filed in Illinois State Court by Citgo Petroleum Corporation and PDV Midwest Refinery, L.L.C., (the "Citgo Plaintiffs") seeking recovery of unspecified damages arising out of a fire that took place at its Lemont, Illinois refinery in August of 2001.  At the time the underlying case was filed, B&W was insured by primary and excess layers of general liability insurance covering claims in excess of a self-insured retention and deductible.  The primary and excess insurance layers totaled $375,000,000.00 in coverage and included a third layer excess liability "claims made" policy of insurance issued by Starr Excess Liability Exchange ("Starr"), for the policy period from January 1, 2003, through January 1, 2004.

On November 1, 2005, B&W filed its Original Complaint with this Court, alleging that Defendants contracted to perform certain claims and services related to the Starr policy. Specifically, B&W alleges that upon receipt of notice of the underlying case, Defendants notified the first and second layer excess insurance carriers of the Citgo Plaintiffs' claim, but

2

failed to notify Starr of the claim within the policy period. B&W alleges that as a result, it has lost the benefit of a settlement offer that would have limited collection to available insurance limits and seeks declaratory relief that the defendants are responsible for any losses in excess of insurance coverage that B&W may incur in the future as a result of the Underlying Case.

B&W subsequently entered into a settlement agreement with the Citgo Plaintiffs and certain intervening underwriters entitled "Joint Stipulation and Accord" ("JSA"), approved by the bankruptcy court on December 22, 2005.  The terms of the JSA initially specified that B&W's maximum liability for the non-insured damages would be limited to $50,000,000; however, the terms were later modified limiting B&W's maximum liability for the non-insured damages to $47,500,000.  B&W paid the Citgo Plaintiffs $7.5 million shortly after February 22, 2006.

All of the parties to this litigation contend that Starr improperly denied coverage, and the pursuit of all claims against Starr is a condition to the benefits and obligations set forth in the JSA.  The Illinois state court action has been assigned to the expedited tort action pool and it is anticipated that a trial will occur this year.

On August 11, 2006, the Citgo Plaintiffs instituted a direct action suit ("the Direct Action") against B&W, Starr Excess

3

Liability Insurance Company, Ltd. and Starr Excess Liability Insurance International Limited, a wholly-owned subsidiary of Starr Excess Liability Insurance Company, Ltd., in Cause No. 06 L 00513, in the Circuit Court of Will County, Illinois, 12th Judicial District.  The Citgo Plaintiffs invoke the provisions of the Louisiana direct action statute, La. R.S. 22:655.

## II.  ARGUMENTS OF THE PARTIES

### A.  Arguments of McGriff in Support of Dismissal or Stay

B&W denies liability in the Underlying Case and Defendants contend that the allegations in the present case make it clear that, ultimately, there may be no damages awarded in the Underlying Case and that this entire proceeding may prove unnecessary.  Therefore, Defendants contend that B&W's claims and causes of action must be dismissed for lack of subject matter jurisdiction and/or failure to join a party under Rule 19 of the Federal Rules of Civil Procedure, or in the alternative, stayed pending resolution of the Underlying Case.  In addition, B&W asserts that the filing of the Direct Action provides the Plaintiffs with another forum to fix and finalize B&W's ultimate liability and exposure for the uninsured losses.

Defendant argues that given the uncertain nature of B&W's final liability and exposure, this case does not fall within the exceptions to the Fifth Circuit's general rule requiring a party seeking indemnification to establish complete and actual

4

liability on his part in order to recover against the indemnifying party. <u>American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmer's Mut. Cas. Ins. Co.</u>, 280 F.2d 453, 457-58 (5th Cir. 1960). This rule may be modified only if the indemnitee can demonstrate that he either (1) tendered the defense of an action to the indemnitor; (2) the claim for indemnity is founded upon judgment, or (3) indemnitee's claim is based upon a written contract of insurance or indemnity. <u>Exxon Corporation v. St. Paul Fire and Marine Ins. Co.</u>, 129 F.3d 781, 785 (5th Cir. 1997). Because none of the exceptions to the general rule exist in this case, B&W's claims against McGriff remain contingent and premature, warranting dismissal or stay of these proceedings.

**B. Arguments of B&W in Opposition to Dismissal or Stay**

B&W argues that it will remain out-of-pocket for millions of dollars, regardless of liability, due to the settlement agreement entered into with the Citgo Plaintiffs. As a result, B&W also argues that it already has a present claim against McGriff for damages in the amount of $7.5 million, which B&W paid to the Citgo Plaintiffs in connection with the Underlying Litigation due to McGriff's complained-of acts and omissions. McGriff's duties and obligations to B&W with respect to the insurance policies included providing timely and sufficient notice of claims or occurrences to B&W's insurers. After the refinery fire that was

5

the subject of the Underlying Litigation, McGriff notified some of B&W's insurers but failed to provide notice to the third layer of insurance, issued by Starr, until later.  Starr relied on the delay in notification to deny the claim, and that denial in turn caused B&W to lose the benefit of a settlement offer under which it would have had no uninsured exposure.  But for McGriff's apparent failure to provide satisfactory notice, B&W could and would have settled the entire Citgo claim in June 2005 with no uninsured exposure whatsoever.  With the loss of that settlement agreement, B&W was forced to enter into an agreement which only limited its liability to $50 million.

B&W also alleges that McGriff breached its contractual obligations and caused damages, and since these allegations must be taken as true for purposes of Rule 12 motions, the motions to dismiss should be denied.

## III. LAW AND ANALYSIS

Article III of the Constitution restricts a federal court's jurisdiction to actual "cases" or "controversies."  U.S. Constitution art. III, § 2, cl. 1.  Whether this requirement is met in the context of a request for relief pursuant to the federal Declaratory Judgment Act depends upon "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

6

issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). In addition to the mandates of the Constitution, the Declaratory Judgment Act also requires that the court only issue a declaration relating to an "actual controversy." 28 U.S.C. § 2201(a); see Orix Credit Alliance, Inc. v. Wolfe, 212 F.3d 891, 896 (5th Cir. 2000). The controversy at the heart of a declaratory judgment must also be ripe, and the Supreme Court stated the general rule for determining ripeness in Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240-41, (1937):

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

The issue of whether a case or controversy exists sufficient to support this Court's exercise of subject matter jurisdiction is resolved by the application of federal law. In re Summers, 325 U.S. 561, 566-67 (1945). A declaratory judgment plaintiff bears the burden of proving that there is an actual controversy, and the exercise of that jurisdiction rests at the discretion of the district court. Fina Research, S.A. v. Baroid Ltd., 141 F.3d 1479, 1481 (D.C. Cir. 1998).

A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical. The key considerations are

"the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," and a case is not ripe if further factual development is required. <u>New Orleans Public Service, Inc. v. Council of New Orleans</u>, 833 F.2d 583, 586-87 (5th Cir. 1987).

The defendant relies principally on two cases to support its argument that this Court should its exercise discretion to dismiss or stay these proceedings. In <u>American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Insurance Co.</u>, 280 F.2d 453 (5th Cir. 1960), the Fifth Circuit affirmed the district court's dismissal of American Fidelity's action seeking a declaration that it had no duty to indemnify its insured in an underlying tort action. The Fifth Circuit held that American Fidelity did have a duty to defend its insured, but upheld the district court's ruling that American Fidelity's request was "not appropriate, especially since many of the underlying questions would be litigated" in the underlying action. <u>Id.</u> at 457. The Court, in addressing the issue of ripeness, held that the district court properly "decline[d] to express legal opinions on academic theoreticals which might never come to pass." <u>Id.</u> at 461. The Court relied on the fact that the underlying action could resolve favorably for the insured, rendering the issue of who is to pay the judgment moot, and that factual issue would likely be resolved that bore upon the issue

8

of coverage.   Id.

The Fifth Circuit in Allstate Insurance Co. v. Employers
Liability Assurance Corp., 445 F.2d 1278, 1281 (5th Cir. 1971)
stated that "no action for declaratory relief will lie to
establish an insurer's liability in a policy clause contest such
as the one at bar until a judgment has been rendered against the
insured since, until such judgment comes into being, the
liabilities are contingent and may never materialize."  Defendant
contends that, although the instant case does not involve a
policy clause contest in the direct sense, the American Fidelity
and Allstate rationales still apply as B&W's liability and damage
exposure remain contingent and uncertain until finally resolved
in the Underlying Case.  Further, they argue that the present
case is even more contingent and abstract than the American
Fidelity case.  First, until a judgment is entered against the
insured in the Citgo litigation which is greater than
$250,000,000, the potential liability of Starr is contingent and
may never materialize.  Even if such a judgment is rendered in
the Citgo litigation, any potential liability of the defendants
is contingent and may never materialize until there is a judgment
that Starr properly denied coverage and is not liable.
Therefore, both conditions must occur before McGriff could be
liable, and such potential liability is speculative, contingent,
and uncertain.

9

Under Illinois law, a plaintiff may add or subtract claims at any time prior to the final judgment.  See 735 ILCS 5/2-616. Therefore, Defendants contend, because the prevailing claims in the Underlying Case may be different than those alleged at the time of trial, any court order involving the presently pending claims would be purely advisory.  Guaranty Nat. Ins. Co. v. North River Ins. Co., 909 F.2d 133, 137 (5th Cir. 1990) (despite pleadings in the underlying case alleging covered and excluded claims, the jury's findings on causation controlled which claims were covered under the policy).  The Supreme Court stated that "for a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts."  Ashcroft v. Wattis, 431 U.S. 171, 172 (1977).

No contract for indemnification exists between B&W and McGriff, and a cause of action for implied indemnity does not accrue or come into existence until the indemnitee has suffered actual loss through payment.  American Sheet Metal, Inc. v. EmKay Engineering, Inc., 478 F. Supp. 809, 814 (E.D. Cal. 1979). Therefore, indemnification is inappropriate until actual liability is found against the indemnitee, and "[i]n such instances, courts normally dismiss declaratory judgment actions, especially where the federal relief sought may hinge upon the outcome of state court actions." .  Ticor Title Ins. Co. of Cal.

10

v. American Resources, 859 F.2d 772, 777 at n. 7 (9th Cir. 1988).

Because the important facts of liability and damages have yet to be determined, proceeding with this action would be inappropriate.  District courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act.  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  If the Citgo Plaintiffs prevail in the Underlying Case and if the judgment against B&W is so large that Starr's excess policy would be necessary to compensate the Citgo Plaintiffs, then a declaratory judgment requiring McGriff to indemnify B&W may be appropriate.  Until that point is reached, however, rendering such a judgment would not be proper.

Accordingly,

IT IS ORDERED that the Motion to Stay these proceedings filed on behalf of the Defendants, McGriff, Seibels & Williams, Inc., and McGriff, Seibels & Williams of Texas, Inc., be and the same is hereby GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes; and

IT IS FURTHER ORDERED that the Court shall retain jurisdiction and that the case shall be restored to the trial docket upon motion of a party if circumstances change, so that it may proceed to final disposition; this order shall not prejudice the rights of the parties to this litigation.

11

New Orleans, Louisiana this __2nd__ day of October, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE